## STATE v. JACOB.

1. Defendant being on trial for receiving stolen goods, knowing them to have been stolen, it was not error to receive testimony offered by the prosecution to show that about the same time defendant had in his possession other stolen goods of the same owner, even without showing defendant's guilty knowledge as to such other goods.

2. In reaching their verdict the jury have a right to act upon their personal knowledge of the witnesses who have testified, and the trial judge did not err in telling the jury so.

3. In saying to the jury : "Do you believe B ? It is not a question as to B's veracity. I have heard no evidence against her veracity. But

counsel argue that B was mistaken"—the judge did not charge on the facts.

4. But he did so improperly charge when he told the jury that a certain material matter of fact was "improbable," adding that if defendant wilfully made a misstatement as to that fact, the jury might conclude that she would misstate other facts. *Mr. Justice McGowan, dissenting.*

5. Two defendants being on trial for receiving stolen goods above the value of $20, knowing them to have been stolen, the judge ruled that they were entled to twenty challenges each. Defendants having challenged two jurors each, the judge correctly ruled that the offence charged was a misdemeanor, and defendants could challenge each only three more, which they did. *Held*, that there was no ground for a new trial.

Before NORTON, J., Fairfield, June, 1888.

The opinion fully states the case.

*Mr. Chas. A. Douglass*, for appellants.

*Mr. McDonald*, solicitor, contra.

February 12, 1889. The opinion of the court was delivered by

MR. JUSTICE MCIVER. In this case the defendants were indicted for receiving stolen goods, exceeding the value of twenty dollars, knowing them to have been stolen. When the case was called for trial the Circuit Judge directed that the defendants be arraigned, and announced that they were each entitled to twenty peremptory challenges. After each of the defendants had peremptorily challenged two of the jurors presented, the judge reconsidered his ruling and held that the defendants were each entitled to only five peremptory challenges, to which ruling exception was duly taken by the counsel for defendants. After exhausting their remaining challenges, of three each, under the final ruling of the Circuit Judge, the jury was organized and the trial proceeded.

"Upon the trial of the cause the presiding judge admitted as competent, against the exception of defendants' counsel, testimony going to show defendants' possession of goods alleged by prosecutor to have been stolen from him, and to the identity of which he testified, said goods not having been alleged or described

in the indictment." The charge to the jury appears to be set out in full in the "Case," and in it we find this language in reference to the testimony thus objected to: "I have said before during this trial that the testimony in regard to a quantity of these goods was introduced for the purpose of showing the guilty knowledge of the defendants, but for no other purpose was that necessary"; and the jury were explicitly instructed that they could not find the defendants guilty, unless they believed that they had received some or all of the articles mentioned in the indictment, knowing them to have been stolen, even though they might come to the conclusion that some or all of the goods not mentioned in the indictment were so received by the defendants.

The jury having found the defendants guilty, they were each sentenced to pay a fine of $150 and be imprisoned in the penitentiary at hard labor for four months. Defendants appeal, substantially, upon the following grounds: (The first ground having been abandoned need not be stated.) The second and third grounds allege error in receiving testimony as to the possession by the defendants of stolen goods other than those laid in the indictment. The fourth ground complains of error on the part of the Circuit Judge in instructing the jury that they were presumed to know the character of the witnesses, and might take that into consideration in making up their verdict. The fifth and sixth grounds complain that the Circuit Judge invaded the province of the jury by charging on the facts, in the particulars which will hereinafter be specified. The seventh ground complains that defendants were misled by the change in the rulings of the Circuit Judge in regard to the number of challenges to which they were entitled, and that for this reason their motion for a new trial in the court below should have been granted.

It does not seem to us that there was any error in receiving the testimony which is made the basis of the second and third grounds of appeal. As appears from the extract made from the judge's charge above, this testimony was received solely as a circumstance tending to show guilty knowledge on the part of the defendants, and the jury were carefully instructed to consider it only in that light. As is said in 1 *Greenleaf on Evidence*, section 53, note (*b*): "The general rule undoubtedly is, that a dis-

tinct crime, unconnected with that laid in the indictment, cannot
be given in evidence against a prisoner. It is not proper to raise
a presumption of guilt on the ground that having committed one
crime the depravity it exhibits makes it likely that he would com-
mit another. In all criminal cases, however, where the felonious
intent or guilty knowledge is a material part of the crime, evi-
dence is admissible of similar acts of the prisoner at different
times, if such acts tend to prove the existence of such guilty
knowledge or felonious intent." One of the illustrations there
given is this very charge of receiving stolen goods, where the
gist of the offence is the guilty knowledge of the party charged.
See the cases there cited.

So in *Roscoe on Criminal Evidence*, at page 92, the author,
in speaking of this subject, says : "There are three classes of
offences in which, from the nature of the offence itself, the neces-
sity for this species of evidence is so frequently necessary that
they will be considered separately. These are conspiracy, utter-
ing forged instruments or counterfeit coin, and receiving stolen
goods. In these the act itself, which is the subject of inquiry, is
almost always of an equivocal kind, and from which *malus ani-
mus* cannot, as in crimes of violence, be presumed ; and almost
the only evidence which could be adduced to show the guilt of
the prisoner would be his conduct on other occasions." In *Rex*
v. *Wylie* (4 Bos. & Pul., 92), it was held that on the trial of an
indictment for uttering a forged note, knowing it to have been
forged, it was competent to show that the prisoner had previously
passed other forged notes, not mentioned in the indictment, to
other persons, for the purpose of proving the *scienter*, and the
same doctrine has been held in this State in at least three cases.
*State* v. *Petty*, Harp., 59 ; *State* v. *Houston*, 1 Bail., 300 ; *State*
v. *Williams*, 2 Rich., 418.

Upon the same principle it seems to us clear that the same
doctrine should be applied in the present case. The mere fact
that a person has passed one forged note, or has received a single
article of stolen goods, might furnish but slight evidence that, in
the one case, he knew the note was forged, or in the other he
knew the article was stolen ; but if it is shown that he has passed
a number of forged notes, or has received a considerable number

of stolen articles, this certainly tends to show a guilty knowledge, and if so, then it is competent, and it will be for the jury to consider its weight.

It is, however, ingeniously argued by the counsel for appellants that testimony that the accused has received other articles of stolen property than those mentioned in the indictment, even for the purpose of showing the *scienter*, is not competent, unless it appears that the accused received such other articles, knowing them to be stolen ; and it must be conceded that there are expressions in the cases cited by him which would seem to warrant such a limitation of the rule ; but we know of no case in which it has been so decided.  On the contrary, the case of *The State* v. *Houston, supra,* negatives any such idea.  For in that case it was held that on the trial of an indictment for uttering a forged note, knowing it to have been forged, it was competent, for the purpose of showing defendant's guilty knowledge, to show that another note uttered by him was forged, although he had previously been acquitted under an indictment for uttering the last mentioned note knowing it to have been forged.

Indeed, in none of the cases which we have been able to examine does it appear to have been regarded as necessary to show that the accused had uttered other notes than the one laid in the indictment, *knowing them to have been forged;* but the admissibility of such testimony seems to have been rested upon the ground that, while it is not at all improbable that a person might innocently pass a single forged note, it was not at all probable that he would pass a number, or even several, of such notes, without knowing they were forgeries.  So here, while the fact that one has received a single article of stolen goods, would afford but slight, if any, evidence that he knew such article was stolen ; yet if it is shown that he has received a number of articles of stolen property, especially where, as in this case, such articles were shown to have been stolen from the same person, and probably about the same time, this is a circumstance from which guilty knowledge may be inferred, though the weight to be attached to such circumstance is exclusively for the jury.

The fourth ground of appeal is based upon the following language in the judge's charge to the jury : "There is one thing out-

side the record that you are presumed to know, and that is the
character of the witnesses who have testified. You have been
drawn from the vicinage for the reason that you are supposed to
know the witnesses who testify." This, it is argued, was erro-
neous, because in violation of the rule that the jury must draw
their conclusions from the testimony adduced in the case, and not
from facts known to them, or any one or more of them. While
it is undoubtedly true that a jury is not at liberty to consider any
fact pertinent to the issue which they are called upon to try,
unless it is found in the testimony adduced, even though such
fact may be known to some one, or all, of the jury; yet this rule
does not, and cannot, from the very nature of things, forbid a
juror, in weighing the credibility of the testimony, from taking
into consideration his own knowledge of the character of the wit-
ness delivering such testimony. The credibility of testimony is
a question exclusively for the jury, and we do not see how it is
possible for a juror in considering that question to exclude from
his mind his own knowledge of the character of the witnesses.
The question is, what impression does the testimony make upon
the minds of the jurors, and that impression must necessarily be
affected by their own knowledge of the character of the witnesses
from whom such testimony proceeds. We suppose that it rarely,
if ever, happens that the character of at least some of the wit-
nesses is not known to some or all of the jurors, and we do not
see how any rule of law can prevent such knowledge from hav-
ing its weight. If a fact is testified to by a witness whom the
jurors know to be of such an infamous character as to render
him totally unworthy of belief, it is difficult to understand how
any rule of law can compel a jury to believe that which they
cannot believe. The constitution of the human mind renders
such a rule as that contended for utterly impracticable.

But we are not without authority in our own State for the view
which we have taken, as may be seen by reference to the case of
*McKain* v. *Love* (2 Hill, 506), where it was expressly held that
a jury must in some degree act upon their own knowledge of the
character of the witnesses, Johnson, J., in delivering the opin-
ion of the court, saying: "To exclude matter of this sort would
be to strip the trial by jury of one of its most valuable append-

ages—the right of weighing the credibility of witnesses." The same doctrine was plainly implied, though the point was not raised, by what was said in the recent case of *State* v. *Jones*, 29 S. C., at page 233; and we are not aware that it has ever before been questioned in this State.

The fifth and sixth grounds of appeal complain that the Circuit Judge invaded the province of the jury by charging them with respect to matters of fact, in violation of section 26, art. IV., of the Constitution. The specification relied upon in the fifth ground is that the judge used the following language in his charge to the jury: "Now, do you believe Mrs. Boag? It is not a question as to Mrs. Boag's veracity. I have heard no evidence against her veracity. But counsel argue that Mrs. Boag was mistaken," &c. It seems that Mrs. Boag, the wife of the prosecutor, who had, principally, charge of the dry goods department of her husband's store, from which the goods in question were alleged to have been stolen, was introduced as a witness to identify the articles found in the house of the defendants, and that she relied, somewhat at least, upon her husband's private mark on the goods, as a means of identifying them. It also appeared that there was a direct conflict between her and the defendant, Patsy, who was examined as a witness for the defence, especially in regard to the marks on an infant's sacque, one of the articles found in the house. The argument, as we understand it, is that by using the language above quoted the judge expressed or indicated to the jury his opinion as to the veracity of Mrs. Boag. We do not so construe that language. It does not appear that the veracity of Mrs. Boag was impeached, either by evidence or in argument, and the judge, in using the language objected to, was simply narrating facts which had transpired in the presence of the jury, and cannot be regarded as expressing, or even indicating, his own opinion as to any fact which the jury was called upon to consider.

The particular language relied upon as the basis of the sixth ground of appeal is, as there quoted, though there is a slight verbal inaccuracy which, however, does not affect the sense, as follows: "Patsy says that the little sacque, when taken from her possession, had no mark on it, while Mrs. Boag testifies that it

has her private mark on it, and that that mark was not put on it since taken from Patsy's possession. If Mrs. Boag made that mistake, might that private mark have been put there without her knowledge? This is improbable. But if you come to the conclusion that the witness has wilfully misstated a fact, then you may safely conclude that she would misstate facts which would be to her advantage if the testimony came out uncorrob'orated—that is, if you come to the conclusion that she has wilfully misstated a fact.''

This matter of charging upon the facts has been so often before this court that it is unnecessary to cite authorities to show that the rule is well settled that the Circuit Judge should carefully avoid expressing, or even indicating, his own opinion as to any of the facts of the case, leaving it for the jury, unbiassed by any impressions which the testimony may have made on the mind of the judge, to determine what facts have been established. So that our inquiry here is whether this rule has been violated in the present case. We are constrained to say that we think it has; and for this reason there must be a new trial. It will be observed that one of the material questions in the case was whether the goods were identified, and as the private mark of the prosecutor was relied upon as a means of identification, it, of course, became a very important inquiry whether that little sacque, which seems to have been more specifically mentioned than any of the other articles, had such private mark upon it at the time it was taken from defendant's possession, and as to this there was a direct conflict between the testimony of Mrs. Boag and the defendant, Patsy; and as the veracity of Mrs. Boag had not been impeached in any way, the real inquiry was whether Mrs. Boag might not have been mistaken in saying that the private mark was not put on the sacque after it was taken from Patsy's possession.

Upon this point, it seems to us, that the judge pretty clearly indicated to the jury his own opinion, that Mrs. Boag was not mistaken, when he told the jury that it was not probable that the mark was put on the sacque after it left Patsy's possession without the knowledge of Mrs. Boag. This was a matter exclusively for the jury to determine, unbiassed by any impression made upon

the mind of the judge. If the mark was on the sacque when it left Patsy's possession, the natural conclusion would be that she had testified falsely in denying that fact; and when the jury were told that an unimpeached witness had testified that it was on the sacque at the time, and that it was not probable that such witness was mistaken in making that statement, the jury would very naturally conclude that the impression made upon the mind of the judge was that Patsy had testified falsely, especially when it was immediately followed by the statement that if the witness had wilfully misstated one fact, the jury might safely conclude that she would make other false statements.

The only remaining inquiry is that presented by so much of the seventh ground of appeal as complains that the Circuit Judge should have granted defendant's motion for a new trial, because they were misled by the first ruling in reference to the arraignment and the number of challenges to be allowed, the motion in arrest of judgment having been abandoned. Inasmuch as it is conceded, and properly conceded, that there was no error of law in the final ruling as to this matter, we do not see that the defendants have any *legal* ground upon which to rest their complaint; and if their motion for a new trial rested upon any other ground, then it was a matter solely for the discretion of the court below, with which we cannot interfere. The defendants were not denied any right which they were entitled to by law. They were allowed the full number of challenges provided for by law, and the fact that they had each exercised the right of challenging two jurors, while they were led to suppose, from the first ruling of the Circuit Judge, that they were entitled each to twenty, instead of five, challenges, cannot affect the question. No juror whom they had a right to challenge peremptorily was allowed to sit, and we do not see that this ground presents any error of law which we have a right to consider. It may be that if defendants had known at the outset that they would be limited to five challenges, they would not have challenged the two who were challenged, when they supposed they would be entitled to twenty challenges, but would have preferred to exercise that right towards others supposed to be more objectionable than those who were actually challenged; but it is well settled that the right of

challenge is a right to *reject*, and not a right to *select*, jurors. *State* v. *Wise*, 7 Rich., 412, and authorities there cited. Hence, where there is no denial of the right to reject the number of jurors to which the party is entitled, it cannot be said that there is any error of law in organizing the jury.

. The judgment of this court is that the judgment of the Circuit Court be reversed and that the case be remanded to that court for a new trial.

MR. CHIEF JUSTICE SIMPSON concurred.

MR. JUSTICE McGOWAN, *dissenting.* I concur in this opinion upon every point except that as to the judge invading the province of the jury, in what he said about the private mark on the little sacque. "If Mrs. Boag made that mistake, might that private mark have been put there without her knowledge ? This is improbable." Considering that the judge has the right to state the testimony in its logical relations to the propositions which it is to support or contradict, it is not always easy to fix with clearness the exact limit of his province. While the question which the judge propounded, and the answer, might seem a little like argument, I can hardly think it amounted to such a charging on the facts as should set aside the verdict. I think the verdict should be affirmed.

Judgment reversed.