10617.

### WOODS v. THROWER.

(107 S. E. 250)

1. WITNESSES—EVIDENCE OF REPUTATION OF WITNESS ADMISSIBLE THOUGH CHARACTER NOT IMPEACHED WHEN A STRANGER.—Where a witness resided in a county other than that in which the action was tried and was a stranger in the vicinage from which the jury was drawn, evidence of his good reputation for truth, veracity, and fair dealing was admissible, though his character had not been impeached.

2. APPEAL AND ERROR—ADMISSION OF TESTIMONY AS TO WHAT WITNESS WOULD HAVE DONE IF DEFENDANT'S OFFER DIFFERENT HELD NOT PREJUDICIAL.—On the issue whether defendant agreed to make repairs to an automobile for $100 or whether plaintiff's agent agreed to pay their reasonable cost, the admission of the testimony of the agent as to what he would have done if defendant's offer had been different from what he claimed it was *held* not prejudicial.

Before WHALEY, J., County Court, Richland, 1920. Affirmed.

Action in claim and delivery by Charles A. Woods against T. E. Thrower, trading as Thrower Automobile Company. From judgment for plaintiff, the defendant appeals.

*Messrs. Tompkins, Barnett & McDonald,* for appellant, cite: *Error to admit testimony as to reputation of witness for truth and veracity when it had not been attacked*: 12 Rich. L. 654; 29 S. C. 230; 73 S. C. 492; 22 S. C. 219; 44 S. C. 361; 49 S. C. 420; 69 S. C. 1; 83 S. C. 36; 93 S. C. 296; 12 L. R. A. (N. S.) 364; 10 R. C. L. 947-8. *Opinion of witnesses as to what he would have done under given circumstances irrelevant*: 81 S. C. 193; 55 S. C. 579. *Presumption that error was prejudicial*: 2 R. C. L. 235-6.

*Messrs. Barron, McKay, Frierson & McCants,* for respondent, cite: *Admissibility of the testimony produced by a party as to truth and veracity of his own witness*: 12 Rich.

L. 654; 49 S. C. 418; 29 S. C. 230; 73 S. C. 392; 22 S. C. 219; 44 S. C. 357; 69 S. C. 1; 83 S. C. 36; 26 S. C. 1; 12 L. R. A. (N. S.) 364; 98 S. C. 114; 52 Am. Dec. 314. *No fair jury could have found otherwise:* 93 S. C. 295; 109 S. C. 424.  *Agent may testify as to fact and extent of his agency:* 102 S. C. 434; 105 S. C. 132; 40 L. R. A. 209; 60 S. C. 201; 69 S. C. 531.

May 5, 1921.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

The facts are thus stated in the record:

"This is an action in claim and delivery to recover possession of a Premier automobile.

"Summons and complaint was served on the 28th day of January, 1920. Plaintiff, who resides at Marion, S. C., through his agent, Marshall Wallace, sent his automobile to defendant's shop at Columbia, S. C., for certain repairs. The contention of plaintiff is that the defendant agreed to complete such repairs for the sum of $100. Defendant on the other hand, contended that plaintiff agreed to pay the reasonable cost of such repairs, including new parts furnished, and that the only statement he made to plaintiff's agent as to the cost of same was that the labor on the car, exclusive of parts, would amount to approximately $100. He accordingly, after completing the repairs, rendered a bill to plaintiff in the sum of $230. Plaintiff's agent refused to pay this sum, but tendered defendant $100 and demanded the automobile. Defendant, claiming a lien for repairs, refused to surrender the car unless his bill for $230 was paid. Hence this action.

"The plaintiff seized the car under delivery proceedings, and the defendant put up bond and retook same.

"The entire transaction on the part of the plaintiff was handled by the overseer of plantiff's plantation. Marshall

Wallace; plaintiff himself at the time being engaged in his official duties in Richmond, Va.

"The issues were tried before his Honor Judge Whaley, and resulted in a verdict for the plaintiff. Defendant made a motion for a new trial, which was overruled, and in due time an appeal was taken to this Court."

The exceptions raise two questions, the first of which is whether his Honor the presiding Judge erred in admitting, over defendant's objection, testimony to show the reputation of the witness Marshall Wallace for truth and veracity and fair dealing. After the witness Marshall Wallace had testified in behalf of the plaintiff, another witness, J. C. Gasque, testified as follows, over the objection of the defendant's attorneys:

"By Mr. McKay: Q. Mr. Gasque, I will ask the question over again. Do you know what Mr. Wallace's reputation is for truth and veracity and fair dealing in the community in which he lives? A. I have known Mr. Wallace,, sir, for 12 or 15 years in Marion, and always known him to be an upright, honest person around the community, sir. He bears a very good reputation, a very esteemed reputation, around the community.

"Mr. McKay: Your Honor, Mr. E. W. Mullins of this bar would testify to the same effect. They admit that.

"Mr. McDonald: And we wish to interpose the same objection, your Honor, to Mr. Mulllins' testimony."

The record shows that the witness Marshall Wallace was a resident of Marion, and not of Richland County, in which the action was tried.

The principal authority upon which the appellant's attorneys rely is the case of *Chapman v. Cooley*, 12 Rich. 654, in which it was decided that the character of a witness cannot be defended by evidence, unless it has been attacked directly by evidence. The reasons assigned by the Court in that case for its conclusion are thus stated:

"The consumption of the limited time which can be ap-
propriated to the administration of justice and of the money
of parties and witnesses required by the trial of collateral
issues as to character is a great and growing mischief.    In
this very case, involving in pecuniary interest the value of
a cotton screw  and seven bags of cotton, the Judge re-
ports that three days of a former session were occupied,
with no other fruit than mistrial by cessation of the term,
and that at the trial which resulted in a verdict, notwith-
standing his ruling to exclude such evidence as to the   prin-
cipal witness of the plaintiff, 56 witnesses were examined
as to character.    Great delay, expense, and exasperation
necessarily follow such a course.    Instead of trying the
issue in the action, the procedure, in many cases, is a trial
of the witnesses, and every witness is expected to bring in
his train a host of compurgators who will swear to their
faith in him when he contradicts himself or is contradicted
by others.    These collateral issues as to  character  are
practically and sometimes justly applied not only to the
witnesses as to the facts in controversy, but also as to the
witnesses as to character themselves, and really are unlimited
and illimitable.    In a large majority of cases those colla-
teral investigations are altogether sterile, either because the
testimony of the witness assailed is immaterial, or because
the number is nearly equal of those attacking and those de-
fending his character.    It is frequently a mere contest as
to the number of compurgators and the vilifiers, and in the
muster the vicinage is canvassed and disquieted.    In many
cases witnesses as to character have no character themselves,
and in nine out of ten instances they testify as to their im-
pressions from the conduct of him in question coming un-
der their actual observation, without any conception that
character depends on the belief of the larger part of those
competent to form  an opinion concerning the principles and
reputation of an individual founded on his conduct, namely,
the belief of the community, and not of the individual
testifying."

The question decided in *Chapman v. Cooley,* supra, is quite different from the one now under consideration. The reasons assigned by the Court in that case fully justify its conclusion.    The question now under consideration, however, is whether the rule heretofore announced is applicable, when the witness is a stranger in the vicinage from which the jury is drawn.

In the case of *State v. Jacob,* 30 S. C. 131, 8 S. E. 698, 14 Am. St. Rep. 897, it was held that the jury have the right to take into consideration their personal knowledge as to the character of the witnesses, and that it is not error for the presiding Judge to charge the jury to that effect.    The ground of appeal in that case was based upon the following language in the Circuit Judge's charge:

"There is one thing outside the record that you are presumed to know, and that is the character from the witnesses who have testified.    You have been drawn for the vicinage, for the reason that you are supposed to know the witnesses who testify."

This Court said:

"This, it is argued, was erroneous, because in violation of the rule that the jury must draw their conclusions from the testimony adduced in the case, and not from facts known to them, or any one or more of them.    While it is undoubtedly true that a jury is not at liberty to consider any fact pertinent to the issue which they are called upon to try, unless it is found in the testimony adduced, even though such fact may be known to some one, or all, of the jury; yet this rule does not, and cannot, from the very nature of things, forbid a juror, in weighing the credibility of the testimony, from taking into consideration his own knowledge of the character of the witness delivering such testimony.    * * * We suppose that it rarely, if ever, happens that the character of at least some of the witnesses is not know to some or all of the jurors, and we do not see

how any rule of law can prevent such knowledge from having its weight."

In *Merriam v. Hartford, R. R.,* 20 Conn. 354, reported in 52 Am. Dec. 344, the following rule is stated:

"The general rule is that a witness cannot be supported by evidence of his general character for truth, excepting after a general impeachment of it; but we have adopted an exception to it where the witness, is in the situation of a stranger, in which case we allow him to be supported by evidence of his general good character for veracity, without such impeachment"—citing *Rogers v. Moore,* 10 Conn. 13.

Cook tells us that "reason is the life of the law;" and one of Bacon's maxims is "that not the decision, but the reason, of it should be regarded." The reasons for the decision in *Chapman v. Cooley,* supra, are not applicable when the witness is a stranger; nor have the reasons giving rise to the rule announced in *State v. Jacobs,* supra, any application, unless the witness comes from the vicinage. The reason why an exception should be made to the general rule stated in the case of *Chapman v. Cooley,* supra, is that a party to the action whose witness comes from the vicinage has an advantage, over his opponent, whose witness is a stranger, as the good character of a witness known to the jurors may be taken into consideration by the jury. The rights of the parties are equalized, as far as possible, by allowing testimony as to the good character of the witness, who is a stranger, to be shown before it is attacked.

The next question to be determined is whether there was error on the part of his Honor the presiding Judge in admitting testimony of the witness Marshall Wallace as to what he would have done as agent of plaintiff if the offer of defendant had been different from what he, Wallace, claimed it was.

The appellant's attorneys have failed to satisfy this court that there was prejudicial error.

Affirmed.

MR. JUSTICE WATTS concurs.

MR. JUSTICE FRASER: The rule above stated that a witness who is a stranger to the jury may show his good character is a just, and the only just, rule.

MR. JUSTICE COTHRAN (concurring:) I concur, but prefer to place my concurrence as to the second ground of appeal discussed in the opinion upon this ground: In an issue as to the agreed price at which certain work is to be done, the testimony of a party to the effect that he would not have had the work done at all at the price contended for by the artificer is generally inadmissible, but, if admitted, I think that it would be so faintly corroborative of the contention of the party testifying as not to warrant the reversal of a judgment which in my opinion meets the justice of the case.