# SUPREME COURT

OF

## THE STATE OF IOWA

AT

## DES MOINES, JANUARY TERM, A. D. 1896,

AND IN THE FIFTIETH YEAR OF THE STATE.

---

STATE OF IOWA v. CHARLES PHILPOT, Appellant.

97 365
98 66
100 161

97 365
104 12

97 365
118 216

97 365
138 423

**Evidence:** CROSS EXAMINATION. Where a witness testifies that prosecutrix consented to intercourse with him and defendant, and they entered the grounds where they met her without any particular object, he may be asked on cross-examination whether he did not ask persons to inform him, whether there was an opportunity to obtain intercourse.

REBUTTAL. And it may be shown to impeach him, that he did make such inquiry.

PROOF OF FORCE. The jury may consider the age, appearance and demeanor of the prosecutrix, during trial, as bearing on whether she consented to intercourse.

**Instructions.** An instruction that where there is carnal knowledge and no proof of consent appears, the force which the law demands in rape, is involved in the act of intercourse itself, is disapproved. Its tendency is to put the defendant to proof of consent.

(365)

**Practice:** JUROR. A juror who heard part of the evidence and of the argument, on the trial of one who was jointly indicted with defendant, is not disqualified to serve as juror on the trial of defendant, where he says he has no opinion as to the guilt of the accused.

CONDUCT OF JUDGE. A witness said that after being accosted by prosecutrix, she consented to go out in a buggy with him and promised to submit to intercourse. In ruling upon an objection, the judge said: "The witness has already testified that he was himself seduced, practically, in stating that the prosecutrix invited him out. Now, if it can be shown on cross-examination that he went there to obtain intercourse, it is a contradiction of his testimony. *Held*, it was just as prejudical to say this as to formally charge it, especially as some part of the remarks is not sustained by the evidence. The court had no right to invade the province of the jury and tell it what the effect and true interpretation of this testimony was, assuming, for the sake of the argument, that the court's statements and deductions were correct.

*Appeal from Taylor District Court.*—HON. H. M. TOWNER, Judge.

TUESDAY, APRIL 7, 1896.

DEFENDANT was jointly indicted with one Melville Philpot, his cousin, for the crime of rape. Melville was first tried, and acquitted. Defendant, upon his trial, was convicted of the crime of an assault with intent to commit rape, and was sentenced to the penitentiary for the term of five years. He appeals.— *Reversed.*

*Maxwell & Winter* for appellant.

*Milton Remley*, attorney general, *W. M. Jackson*, county attorney, and *Jesse A. Miller* for the state.

DEEMER, J.—Defendant and his cousin met the prosecutrix, a young woman, about nineteen years of age, by the name of Mary A. Winslow, at a picnic, which was being held in a grove in Taylor county, Iowa, on the thirtieth day of August, 1894. At the

request of defendant or his companion, they all entered a buggy, belonging to the men, and drove south from the picnic grounds, on the highway, and from there turned into a clump of bushes or thick timber, where the men each had sexual intercourse with the prosecutrix. It is claimed by the state, that the defendants, by force, pulled or dragged the woman from the buggy, and had connection with her, against her will; that each of the men had intercourse with her, while the other held her. On the other hand, the defendant, while admitting the intercourse, says, that it was had with the consent of the prosecutrix. The jury found, there was no rape, but found the defendant guilty of an assault with the intent to commit rape.

I. It is contended that the court erred in overruling a challenge, interposed to one of the jurors. It appears that this juror heard a part of the evidence, and part of the arguments, on the trial of the case against Melville Philpot. But he said that he had neither formed nor expressed an opinion, as to the merits of the case, nor had he any opinion as to the guilt or innocence of the defendant. The challenge was properly overruled.

II. Melville Philpot was a witness for the defendant, and, in his examination in chief, testified, in substance: That prosecutrix came up to where defendant and he were standing, and, without any previous introduction, saluted them with the remark, "How do you do, boys?" That they entered into a commonplace conversation with her at first, which finally led to his asking her if she did not wish to take a buggy ride, to which she responded that she did, and that he then asked her if she would "do business" if they took a buggy ride, and she said she would. And, in response to an interrogatory as to whether both men should go or not, she said she did not care. That it was arranged that the two men should go ahead to

where the buggy was standing, and that then she should follow,—this in order that they might not attract attention. That they went to where the buggy was, and that she and witness got in, while defendant went down the road about one hundred yards, where he stopped and waited until the buggy came up, and then got in. That they drove to where there were some scattered trees and saplings, and that, after some conversation, the prosecutrix voluntarily alighted from the buggy, and that all parties went to where there was some thick brush, and that defendant had intercourse with the woman while the witness kept watch, and that he (witness) afterwards had connection with the prosecutrix while defendant kept watch. On cross-examination the witness was asked what the object was in going to the picnic grounds, and he stated that they had no particular object; that they simply concluded to go; that they were acquainted with a few people there, and had frequently visited in the neighborhood. Witness was then asked if he knew A. J. Gordon, and he stated that he did. He was then asked this question: "Q. On the picnic grounds, on the day you say you were there, didn't you ask Mr. A. J. Gordon if he could not put you (meaning you and your cousin, the defendant in this case) onto some 'banging,' meaning by that to obtain information as to whether or not you could obtain sexual intercourse with some female?" To which defendant's counsel objected as immaterial, irrelevant and not proper cross-examination, and for the further reason that the question was not proper as a foundation for impeaching purposes, because it called for a matter immaterial to the issues. Upon this objection the court made the following ruling and remarks: "The Court: The objections are overruled. This witness has already testified that he was himself seduced, practically,

according to his testimony, by his statement that this lady invited him out, or something to that effect. Now, if it can be shown on cross-examination, or by asking him impeaching questions, that this witness went there for this specific purpose, it is a contradiction of his testimony." The defendant objected and excepted to the remarks made by the court, and now urges that they were erroneous, and prejudicial to the rights of the defendant. He also contends that the objection to the question should have been sustained. We think the question propounded was a proper one, for the answer tended to show the pupose and intent of the witness in going to the grounds, and his object in meeting the prosecuting witness. Concede, for the purpose of argument, that it related to a collateral matter, and that the state would be bound by the witness' answer, yet it does not follow that the fact sought to be elicited, was immaterial. It was legitimate cross-examination, under any theory of the case. The more serious question relates to the remarks made by the court, in passing upon the objection. These remarks were made, it is true, in the heat of the trial, and were, no doubt, called out by something that was said by counsel, either in the objections interposed, or in the argument made in support thereof, and were not uttered with intent to prejudice the case, or prejudice the effect of the witness' testimony. But it is a matter of common knowledge that jurors hang tenaciously upon remarks made by the court during the progress of the trial, and if, perchance, they are enabled to discover the views of the court regarding the effect of a witness' testimony, or the merits of the case, they almost invariably follow them. Turning now to these remarks, we find that the court said, in effect, that the witness had already

testified that he (witness) was himself seduced, practically.   While it may be true that this interpretation could well have been placed upon the witness' testimony, and while, perhaps, it may have been the more probable one, yet the effect of his testimony was solely for the jury.   The court, under our system of procedure, is not allowed to express himself regarding the facts.   What the testimony does or does not prove, and what deductions are to be made from it, are questions solely for the jury.   But the court also said, "According to his testimony, by the statement that this lady invited him out, or something to that effect."   We have carefully examined all the evidence to see if there was any testimony showing or tending to show that "the lady invited him either to go out buggy riding, or to get out of the buggy, or to go into the brush," and we did not find any.   So that the court not only gave to the jury a statement as to the effect of the testimony, but it also appears that he was in some manner misled regarding what had preceded, and stated that the witness had said something which the record, as we have it, does not show that he did say.   But the court further said that, if it could be shown that the witness went there for the specific purpose, which an answer to the question might indicate that he did go for, that this would be a contradiction to his testimony.   Here, again, we think the court invaded the province of the jury.   Doubtful it is, to say the least, whether an answer to this question would be a contradiction of the witness' testmony.   But concede that, to the mind of the court, such might or would be its effect, and that for this reason the objection was properly overruled; yet it does not follow that the court's conclusion respecting it was conclusive.   It was for the jury ultimately, to say whether such a statement would be a contradiction of

what had theretofore been stated by the witness. The
rule seems to be well settled that if the judge, during
the progress of the trial, makes remarks in the pres-
ence of the jury, which would be erroneous and pre-
judicial had they been embodied in the formal charge
given by him to the jury, it will entitle the losing
party to have a verdict to which they might have con-
tributed, set aside. It is perfectly manifest that the
remarks of the court, had they been formulated into
a paragraph of the instructions, would have been
erroneous. We are constrained to hold that the
remarks of the court were erroneous, and prejudicial
to the defendant; and, although we are abundantly
satisfied that they were unintentionally made, yet the
rights of the defendant must be preserved and pro-
tected. Our conclusions are supported by the follow-
ing, among other, authorities: *Sharp v. State*, 51 Ark.
147 (10 S. W. Rep. 228), and (14 Am. St. Rep. 27), cases
cited in note; *State v. Jacob* (S. C.) (8 S. E. Rep. 698);
*Lumber Co. v. Smith*, 71 Wis. 304 (37 N. W. Rep. 412);
*State v. Harkin*, 7 Nev. 377; *State v. Stowell*, 60 Iowa,
535 (15 N. W. Rep. 417); *Russ v. Steamboat*, 9 Iowa,
374. The cases of *Hall v. Carter*, 74 Iowa, 364 (37 N.
W. Rep. 956); *Railway Co. v. Cowan*, 77 Iowa, 535 (42
N. W. Rep. 436); *Elwell v. Sullivan* (Me.) (13 Atl. Rep.
901),—relied upon by the state, are not in point.

III. It is argued that the court erred in allowing
the witness, Gordon, to testify in rebuttal that defend-
ant asked him if he (witness) could put them onto a
girl on the grounds, with whom they (meaning defend-
ant and his cousin) could have sexual inter-
course. We think the testimony was proper
for the purpose of impeaching the defendant.
The matter was not collateral, but was material to
the issues.

IV. The seventh instruction is complained of.
It, in effect, says that when there is carnal knowledge,

and no consent is directly or inferentially shown, there is, in the act itself, all the force which the law demands as a necessary element in the crime of rape. This instruction was given with reference to the question as to whether the defendant had sexual intercourse with the prosecutrix by force, and against the will of the prosecuting witness. Taken in connection with the other instructions, it may not have been prejudical, but it was liable to confuse the jury, and its tendency was to place the burden of showing consent upon the defendant. This is not the rule, as we understand it. *Pollard v. State,* 2 Iowa, 567. But, in view of the verdict returned, the instruction was clearly without prejudice; and we refer to it in order that we may not, by silence, seemingly approve of the charge, as being a correct abstract statement of the law.

V. In the fourteenth instruction, the court submitted the question of the mental capacity of the prosecuting witness, to the jury, and directed them to consider her age, appearance, and demeanor, as exhibited during the trial, in determining the question. It is insisted that this was error. We do not think so. The jury had the perfect right to consider these matters, although there may have been no other evidence on the subject. The appearance and demeanor of a witness are always proper matters for the consideration of the jury, with reference to any question material to the issues. It was legitimate for the jury to consider the age and strength of mind of the prosecutrix, as exhibited at the trial, as bearing upon the question of consent.

VI. Other instructions are complained of. We have examined each and every of them, and find no error.

VII. Counsel strenuously and learnedly argue that the verdict is against the great weight of the

evidence.   In view of a re-trial, we will not consider this question, for we do not know what evidence may be produced upon a future hearing.   For the error pointed out in the second division of this opinion the judgment is REVERSED.