373 A.2d 1338
COMMONWEALTH of Pennsylvania
v.
Clinton JONES a/k/a Clinton Dupree,
Appellant.

Supreme Court of Pennsylvania.

Argued March 30, 1976.

Decided June 3, 1977.

Charles Jay Bogdanoff, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Jane Greenspan, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROB-
ERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

Appellant, Clinton Jones a/k/a Clinton Dupree, was
tried by a judge and jury and found guilty of murder in
the first degree, robbery and criminal conspiracy in con-
nection with the death of Otis Johnson. Postverdict mo-
tions were denied and on May 12, 1975, appellant was
sentenced to life imprisonment in a state correctional in-
stitution for the conviction of murder in the first degree,
with a concurrent sentence of not less than ten years nor
more than twenty years on the robbery conviction, and a
suspended sentence on the criminal conspiracy convic-
tion. This appeal from the conviction of murder in the
first degree followed.[1]

▮▮ Appellant first argues that the charges and in-
dictments against him must be dismissed and he must be
discharged because of the Commonwealth's failure to
bring him to trial within two hundred seventy days of
the filing of the complaint, pursuant to Pa.R.Crim.P.
1100(a)(1). We do not agree.

Pa.R.Crim.P. 1100(a)(1) provides:

"(a)(1) Trial in a court case in which a written
complaint is filed against the defendant after June 30,
1973 but before July 1, 1974 shall commence no later
than two hundred seventy (270) days from the date on
which the complaint is filed."

The Comment to Rule 1100, when discussing the meth-
od of counting, provides:

"It is intended that the number of days set forth in
paragraphs (a)(1) and (a)(2) be calculated as pre-

---

1. No appeal has been taken to this court from the robbery or
criminal conspiracy convictions and they remain.

scribed by the Act of November 25, 1970, P.L. 707, No. 230, as amended by the Act of December 6, 1972, P.L. 1339, No. 290, § 3, 1 P.S. § 1908."

Section 1908 of the Statutory Construction Act, *supra*, provides:

"When any period of time is referrred to in any statute, such period in all cases, except as otherwise provided in section 1909 of this title (relating to publication for successive weeks) and section 1910 of this title (relating to computation of months) shall be so computed as to exclude the first and include the last day of such period. *Whenever the last day of any such period shall fall on Saturday or Sunday, or on any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation.*" (Emphasis supplied.)

In the instant case, a written complaint against appellant was filed on May 7, 1974. Appellant's trial was commenced on Monday, February 3, 1975. The two hundred and seventieth day was Saturday, February 1, 1975.

Applying § 1908 of the Statutory Construction Act, *supra*, Saturday, February 1 and Sunday, February 2, 1975, must be "omitted" from the computation. Therefore, appellant's trial commenced within the time limit as set forth in Pa.R.Crim.P. 1100(a)(1).

Appellant next argues that the court below erred in denying his requested point for charge that voluntary manslaughter was a permissible verdict. We agree.

In *Commonwealth v. Jones*, 457 Pa. 563, 319 A. 2d 142 (1974), this court required: "that henceforth a defendant under indictment of murder will be entitled *upon request*, to have the jury advised of its power to return a verdict of voluntary manslaughter." (Opinion in support of affirmance by Mr. Justice Nix, joined by Mr. Justice Eagen, now Mr. Chief Justice, and Mr. Justice O'Brien.)

In the instant case, appellant's trial began on February 3, 1975, nine months after the mandate of *Jones, supra.*

Appellant requested that the court charge that murder in the first degree, murder in the second degree, voluntary manslaughter and involuntary manslaughter were permissible verdicts in the instant case. The court refused this point for charge. The court did, however, "discuss" voluntary manslaughter in two portions of its charge wherein it stated:

"I believe it's clear from the evidence and I believe it's clear from counsel's arguments to you, *that there is no manslaughter in the case.* Although I will simply define voluntary manslaughter to you when I get to it. But it's clear under the facts that it doesn't apply, and it certainly doesn't apply to involuntary manslaughter, which I will not even cover." (Emphasis added.)

\* \* \* \* \* \* \* \*

"*There is another definition which I will give you, although I believe that it's clear that it does not apply to the facts of this case.* But there is some belief in the law that since this is part of the definition of criminal homicide, that the jury should have the definition anyway. And that is voluntary manslaughter. Voluntary manslaughter is defined as follows: A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation, either by the individual killed or by another whom the actor endeavors to kill, or if he had—well, I'll stop with that. That is the definition of voluntary manslaughter, which is part of the definition of criminal homicide, *but I believe it is clear that it does not apply to this case.*" (Emphasis added.)

■ The above charge does *not* advise the jury that voluntary manslaughter is a permissible verdict and, therefore, such an omission by the trial court constitutes reversible error. The mere mentioning of voluntary manslaughter to a jury without defining the elements of crime and without informing the jury that it has the power to return a verdict of voluntary manslaughter is in direct contradiction of our mandate in *Commonwealth v. Jones, supra.*

The instant case is distinguishable from *Commonwealth v. Gaddy,* 468 Pa. 303, 362 A.2d 217 (1976) and *Commonwealth v. Yount,* 455 Pa. 303, 314 A.2d 242 (1974). The trials in both *Gaddy, supra,* and *Yount, supra,* were conducted prior to this court's mandate of *Commonwealth v. Jones, supra.* Moreover, in both cases, the trial dourt *did* instruct the jury that voluntary manslaughter was a permissible verdict but then proceeded to express its opinion as to whether the facts could support a verdict of voluntary manslaughter.

Appellant raises other allegations of error which we need not discuss because of our resolution of the above issue.

Judgment of sentence reversed and case remanded to the Court of Common Pleas of Philadelphia for a new trial.

JONES, former C. J., took no part in the consideration or decision of this case.

ROBERTS, J., files a concurring opinion in which MANDERINO, J., joins.

POMEROY, J., joins in the opinion of the Court and files a separate concurring opinion in which NIX, J., joins.

ROBERTS, Justice, concurring.

I agree with the majority that the trial court improperly denied appellant a jury instruction that voluntary

manslaughter was a permissible verdict. See *Commonwealth v. Jones,* 457 Pa. 563, 319 A.2d 142 (1974). In addition, I believe that the trial court exceeded the permissible bounds of judicial comment and improperly impinged upon the exclusive province of the jury when it expressed its opinion that voluntary manslaughter was clearly not applicable to the case. This expression of opinion as to the degree of appellant's guilt deprived him of a fair trial. *Commonwealth v. Archambault,* 448 Pa. 90, 290 A.2d 72 (1972). Thus I agree with the majority that appellant is entitled to a new trial.[1]

Appellant requested the court to charge the jury that murder of the first degree, murder of the second degree, *voluntary manslaughter,* and involuntary manslaughter were permissible verdicts.[2] Although the court refused this charge, it did discuss voluntary manslaughter in its charge to the jury. The court stated:

"I believe it's clear from the evidence and I believe it's clear from counsel's arguments to you, *that there is no manslaughter in the case.* Although I will simply define voluntary manslaughter to you when I get to it. But it's clear under the facts that it doesn't apply, and it certainly doesn't apply to involuntary man-

---

1. I also agree with the majority's resolution of appellant's Rule 1100 claim.

2. The Commonwealth contends that appellant is not entitled to a voluntary manslaughter instruction because he did not request such an instruction as required by *Commonwealth v. Jones,* 457 Pa. 563, 319 A.2d 142 (1974). The Commonwealth concedes that appellant requested a charge that murder of the first degree, murder of the second degree, voluntary manslaughter, and involuntary manslaughter were permissible verdicts. I think that this request is sufficient to require an instruction that *voluntary manslaughter* is a permissible verdict. In post-trial motions and in this appeal, appellant asserts that the trial court's comments that voluntary manslaughter was not applicable to the case were improper. In light of his prior request for an instruction, I believe that appellant has preserved the claim that he was entitled to an instruction that voluntary manslaughter was a permissible verdict under *Commonwealth v. Jones,* supra.

slaughter, which I will not even cover." (emphasis added)

\*     \*     \*     \*     \*     \*     \*     \*

*"There is another definition which I will give you, although I believe that it's clear that it does not apply to the facts of this case. But there is some belief in the law that since this is part of the definition of criminal homicide, that the jury should have the definition anyway.* And that is voluntary manslaughter. Voluntary Manslaughter is defined as follows: A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation, either by the individual killed or by another whom the actor endeavors to kill, or if he had—well, I'll stop with that. That is the definition of voluntary manslaughter, which is part of the definition of criminal homicide, *but I believe it is clear that it does not apply to this case."* (Emphasis added)

Contrary to the trial court's charge, voluntary manslaughter would have been an appropriate verdict in this case. First, our cases establish that voluntary manslaughter is by definition a lesser included offense of murder.[3] Second, a jury pursuant to its inherent mercy

---

**3.** *Commonwealth v. Cain,* 471 Pa. 140, 174, 369 A.2d 1234, 1251 (1977) (Opinion in Support of Reversal); *Commonwealth v. Jones,* 457 Pa. 563, 319 A.2d 142 (1974) (Opinion in Support of Affirmance); *Commonwealth v. Hoffman,* 439 Pa. 348, 358–59, 266 A.2d 726, 732 (1970); *Commonwealth v. Pavillard,* 421 Pa. 571, 576–77, 220 A.2d 807, 810 (1966); *Commonwealth v. Frazier,* 420 Pa. 209, 211–12, 216 A.2d 337, 338 (1966); *Commonwealth v. Frazier,* 411 Pa. 195, 202, 191 A.2d 369, 373 (1963); *Commonwealth v. Nelson,* 396 Pa. 359, 363–64, 152 A.2d 913, 915–16 (1959); *Commonwealth v. Steele,* 362 Pa. 427, 430, 66 A.2d 825, 827 (1949); *Commonwealth v. Arcuroso,* 283 Pa. 84, 87, 128 A. 668, 670 (1925); *Commonwealth v. Kellyon,* 278 Pa. 59, 61–64, 122 A. 166, 167–68 (1923). See also *Commonwealth v. Kenney,* 449 Pa. 562, 570, 297 A.2d 794, 798 (1972) (Opinion of Roberts, J., dissenting, joined by Pomeroy and Manderino, JJ.); *Commonwealth v. Matthews,* 446 Pa. 65, 77–78, 285 A.2d 510, 516 (1971) (Roberts, J., dissenting)

dispensing power, may, from sympathy or awareness of extenuating circumstances, find a defendant guilty of a lesser offense than the evidence could support.[4]

Thus, in every prosecution for murder, a jury may return, and the court must accept, a verdict of voluntary manslaughter even in the absence of any evidence of voluntary manslaughter.[5] Although voluntary manslaughter is defined in terms of provocation, heat of passion and imperfect self-defense, the defendant has no burden to introduce such factors before a voluntary manslaughter verdict is permissible.[6] Voluntary manslaughter is a

(Opinion of Pomeroy, J., dissenting, joined by Roberts, J.); cf. *Commonwealth v. Banks*, 447 Pa. 356, 364, 285 A.2d 506, 509 (1972) (Opinion of Pomeroy, J., dissenting, joined by Roberts, J.).

4. E. g., *Commonwealth v. Hill*, 444 Pa. 323, 327, 281 A.2d 859, 861 (1971); *Commonwealth v. Hoffman*, 439 Pa. 348, 358, 266 A.2d 726, 731 (1970); *Commonwealth v. Moore*, 398 Pa. 198, 208, 157 A.2d 65, 71 (1959); *Commonwealth v. Steele*, 362 Pa. 427, 430, 66 A.2d 825, 827 (1949); *Commonwealth v. Kellyon*, 278 Pa. 59, 64, 122 A. 166, 168 (1923). See *United States v. Dougherty*, 154 U.S. App.D.C. 76, 473 F.2d 1113, 1138 (1972) (Hazelton, C. J., concurring in part and dissenting in part). See also *Commonwealth v. Kenney*, 449 Pa. 562, 570, 297 A.2d 794, 798 (1972) (Opinion of Roberts, J., dissenting, joined by Pomeroy and Manderino, JJ.); *Commonwealth v. Banks*, 447 Pa. 356, 364, 285 A.2d 506, 509 (1972) (Opinion of Pomeroy, J., dissenting joined by Roberts, J.); *Commonwealth v. Matthews*, 446 Pa. 65, 77, 78, 285 A.2d 510, 516 (1971) (Roberts J., dissenting) (Opinion of Pomeroy, J., dissenting, joined by Roberts, J.).

5. *Commonwealth v. Hill*, 444 Pa. 323, 326, 281 A.2d 859, 860 (1971); *Commonwealth v. Hoffman*, 439 Pa. 348, 356–57, 266 A.2d 726, 730–31 (1970); *Commonwealth v. Harry*, 437 Pa. 532, 535, 264 A.2d 402, 404 (1970) (per curiam); *Commonwealth v. Dennis*, 433 Pa. 525, 528–29, 252 A.2d 671, 672–73 (1969); *Commonwealth v. Cooney*, 431 Pa. 153, 157, 244 A.2d 651, 653 (1968); *Commonwealth v. Pavillard*, 421 Pa. 571, 576–77, 220 A.2d 807, 810 (1966); *Commonwealth v. Frazier*, 420 Pa. 209, 211–13, 216 A.2d 337, 338 (1966); *Commonwealth v. Frazier*, 411 Pa. 195, 202, 191 A.2d 369, 373 (1963); *Commonwealth v. Moore*, 398 Pa. 198, 157 A.2d 65 (1959); *Commonwealth v. Nelson*, 396 Pa. 359, 363, 152 A.2d 913, 915 (1959); *Commonwealth v. Steele*, 362 Pa. 427, 430, 66 A.2d 825, 827 (1949); *Commonwealth v. Kellyon*, 278 Pa. 59, 61–62, 122 A. 166, 167 (1923); *Commonwealth v. McMurray*, 198 Pa. 51, 60, 47 A. 952, 953 (1901); *Commonwealth v. Gable*, 7 Serg. & R. 423 (Pa.1821).

6. A voluntary manslaughter defense must be carefully distinguished from ordinary affirmative defenses. In the latter, al-

permissible verdict whether or not the defendant presents a defense.

In *Commonwealth v. Jones*, 457 Pa. 563, 319 A.2d 142 (1974), all six Justices who participated agreed that after the date *Jones* was filed, a trial court must give a requested charge on voluntary manslaughter in every murder trial, even though there is no evidence of voluntary manslaughter.[7] Two opinions were filed. In the Opinion in Support of Affirmance, three Justices reasoned that this Court, pursuant to its supervisory power, should adopt the "rule that henceforth a defendant under indictment of murder will be entitled, *upon request,* to have the jury advised of its power to return a verdict of voluntary manslaughter." 457 Pa. at 573–74, 319 A.2d at 148 (emphasis in original). In the Opinion in Support of Reversal, three Justices asserted that the failure to give a requested charge on voluntary manslaughter worked a deprivation of due process and equal protection in view of the jury's unquestioned power in all murder prosecutions to return a voluntary manslaughter verdict. 457 Pa. at 577, 319 A.2d at 150.

Appellant's trial occurred after *Jones*. He requested a charge that voluntary manslaughter was a permissible

though the defendant has no burden to show the defense is valid, some evidence must be presented to place the defense at issue before he or she is entitled to any instruction. See *Commonwealth v. Kichline*, 468 Pa. 265, 361 A.2d 282 (1976); *Commonwealth v. Rose*, 457 Pa. 380, 321 A.2d 880 (1974). Here appellant is entitled to an instruction that voluntary manslaughter is a permissible verdict, and appellant has no burden to present evidence of provocation, heat of passion or imperfect self-defense.

7. The United States Court of Appeals for the Third Circuit, ten judges sitting en banc over a single dissent (Kalodner, J.), held in *United States ex rel. Matthews v. Johnson*, 503 F.2d 339 (3d Cir. 1974), cert. denied, 420 U.S. 952, 95 S.Ct. 1336, 43 L.Ed.2d 430 (1975), that due process requires that voluntary manslaughter instructions be given, if requested by the defense, in every murder trial:

"To hold otherwise is to expose a defendant to the idiosyncracies of the trial judge to whom the case has been assigned, or the 'whim and caprice' of a given judge on a given day."
503 F.2d at 346.

verdict. The court's instruction that "there is some belief in the law that since this is part of the definition of criminal homicide, that the jury should have the definition anyway" did not adequately inform the jury that voluntary manslaughter was a permissible verdict. The Court's statements that "there is no manslaughter in this case" and that "it's clear under the facts that it [voluntary manslaughter] doesn't apply" indicate that the court was of the opinion that voluntary manslaughter was not a permissible verdict. Thus, the import of the jury instructions, read in their entirety, was that voluntary manslaughter was not a permissible verdict. I therefore agree with the majority that appellant is entitled to a new trial.

Not only did the trial court fail to inform the jury that voluntary manslaughter was a permissible verdict, but its expression of personal opinion concerning the degree of appellant's degree of guilt exceeded the bounds of proper judicial comment.

Although this Court has recognized the duty of the trial judge to aid the jury in understanding and clarifying the issues to be resolved, his or her charge should be a calm and dispassionate one. *Commonwealth v. Trunk,* 311 Pa. 555, 565–66, 167 A. 333, 337 (1933). The jury depends on the trial judge for guidance and it will undoubtedly give great weight to any expressions of personal opinion that he or she makes. *Commonwealth v. Archambault,* 448 Pa. 90, 290 A.2d 72 (1972); *Commonwealth v. Myma,* 278 Pa. 505, 123 A. 486 (1924). Thus, in order to preserve a defendant's right to a fair trial, the trial judge must be careful to remain absolutely impartial, and not invade the province of the jury in reaching its ultimate decision. *Commonwealth v. Archambault,* supra; *Commonwealth v. Myma,* supra.

The trial judge's instruction here, that voluntary manslaughter clearly did not apply to the case, communicated to the jury that if it determined that appellant commit-

ted the homicide, it should find that the appellant committed murder and that it should not exercise its power to lessen the crime to voluntary manslaughter because no extenuating circumstances existed to justify such action. This improperly impinged upon the exclusive province of the jury.

In *Archambault,* this Court, after considering the need for judicial impartiality, held that a trial judge must never express to the jury his or her personal view of guilt or innocence no matter how overwhelming the evidence of guilt. We stated:

"An expression by the judge that in his opinion the accused is guilty leaves an indelible imprint on the minds of the jury. The jury is undoubtedly going to attribute to the judge, because of his experience in criminal cases, special expertise in determining guilt or innocence. As Mr. Justice (later Chief Justice) Kephart stated for this Court: 'The judge occupies an exalted and dignified position; he is the one person whom the jury, with rare exceptions, looks for guidance, and from whom litigants expect absolute impartiality. An expression indicative of favor or condemnation is quickly reflected in the jury box. . . . To depart from the clear line of duty through questions, expressions or conduct, contravenes the orderly administration of justice. It has the tendency to take from one of the parties the right to a fair and impartial trial, as guaranteed under our system of jurisprudence.' [*Commonwealth v. Myma,* 278 Pa. 505, 508, 123 A. 486, 487 (1924).]"

448 Pa. at 95, 290 A.2d at 75; see *Commonwealth v. Motley,* 448 Pa. 110, 289 A.2d 724 (1972); ABA Project on Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge § 5.6(a) (Approved Draft, 1972) ("The trial judge should not express or otherwise indicate to the jury his personal opinion whether

the defendant is guilty or express an opinion that certain testimony is worthy or unworthy of belief.") [8]

These same considerations apply with equal force to trial judges' opinions concerning a defendant's degree of guilt. The jury's verdict necessarily includes not only a determination of guilt or innocence but also a determination of the degree of guilt if the defendant is found guilty. The latter decision is often as important as the former, particularly in murder cases. As Mr. Justice Powell, speaking for a unanimous Supreme Court, recently stated:

"The safeguards of due process are not rendered unavailing simply because a determination may already have been reached that would stigmatize the defendant and that might lead to a significant impairment of personal liberty. The fact remains that the consequences resulting from a verdict of murder, as compared with a verdict of manslaughter differ significantly."

*Mullaney v. Wilbur*, 421 U.S. 684, 698, 95 S.Ct. 1881, 1889, 44 L.Ed.2d 508 (1975). Our constitutional system of trial by jury is founded upon the firm belief that the

8. Section 6.4 of the ABA Project on Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge (Approved Draft, 1972) states that "[t]he trial judge should be the exemplar of dignity and impartiality." The Commentary, at 81, notes:
"'It is a matter of common knowledge that jurors hang tenaciously upon remarks made by the court during the progress of the trial, and if, perchance, they are enabled to discover the views of the court regarding the effect of a witness' testimony or the merits of the case, they almost invariably follow them.'" Quoting *State v. Philpot*, 97 Iowa 365, 369, 66 N.W. 730, 732 (1896).
Many commentators have noted the importance juries place on the opinions and attitudes of the trial judge. See e. g., Conner, The Trial Judge, His Facial Expressions, Gestures and General Demeanor—Their Effect on the Administration of Justice, 6 Am. Crim.L.Q. 175, 176 (1968); Frankel, The Search for Truth: An Umpireal View, 123 U.Pa.L.Rev. 1031, 1041–45 (1975); O'Mara, Standard Jury Charges—Findings of Pilot Project, 43 Pa.Bar Ass'n.Q. 166, 173 (1972).

highest quality of criminal justice is achieved when the jury retains the sole power to determine both guilt or innocence and the degree of guilt if guilt is found.

Thus, because of his or her influence over the jury, an opinion by the trial judge that a voluntary manslaughter verdict is clearly not applicable effectively removes that potential verdict from the jury's deliberations. This is a prohibited invasion of the province of the jury and denies appellant his constitutional right to a fair trial before an impartial jury.[9] See *Commonwealth v. Archambault,* supra.[10]

9. The majority states that this case is distinguishable from *Commonwealth v. Gaddy,* 468 Pa. 303, 362 A.2d 217 (1976) (plurality opinion) and *Commonwealth v. Yount,* 455 Pa. 303, 314 A.2d 242 (1974) because the trials in *Gaddy* and *Yount* occurred prior to our opinion in *Commonwealth v. Jones,* 457 Pa. 563, 319 A.2d 142 (1974). I cannot agree that this distinction has any significance. Even before *Jones,* in every prosecution for murder, the jury could return, and the court had to accept, a verdict of voluntary manslaughter, even in the absence of any evidence of voluntary manslaughter. E. g., *Commonwealth v. Hill,* 444 Pa. 323, 326, 281 A.2d 859, 860 (1971); *Commonwealth v. Hoffman,* 439 Pa. 348, 356–57, 266 A.2d 726, 730–31 (1970). Although a majority of this Court, prior to *Jones,* accepted the view that a trial court had discretion whether to instruct the jury on voluntary manslaughter in the absence of any evidence of voluntary manslaughter, e. g. *Commonwealth v. Kenney,* 449 Pa. 562, 297 A.2d 794 (1972), our cases established that voluntary manslaughter was a permissible verdict in every murder trial. *Commonwealth v. Hill,* supra. Therefore, if a trial judge expresses his or her opinion to the jury that voluntary manslaughter is not applicable or that it is not a permissible verdict, it is improper whether the trial occurred before or after *Jones.*

However, I agree with the majority that this case is distinguishable from *Commonwealth v. Gaddy,* 468 Pa. 303, 362 A.2d 217 (1976) and *Commonwealth v. Yount,* 455 Pa. 303, 314 A.2d 242 (1974). In *Yount,* the trial judge commented that, assuming the jury found that appellant maliciously killed the victim, he could not recall any evidence of extenuating circumstances to reduce the crime to voluntary manslaughter. The judge, however, stated that voluntary manslaughter was an "entirely permissible verdict" and "did not . . . suggest that the jury return any particular verdict." Id. at 319, 314 A.2d at 251. We noted: "The court . . . gave the jury a full, complete, adequate and correct charge . . . . The charge read in its

I agree with the majority that the judgment of sentence should be reversed and a new trial granted.

MANDERINO, J., joins in this concurring opinion.

POMEROY, Justice, concurring.

I join in the opinion of the Court, and add this supplementary statement merely to make it clear that a trial court may, in a proper case and in a proper manner, indicate to the jury his view that the evidence does not suggest that the killing was committed in the heat of passion or in response to adequate legal provocation. In doing so, however, the court must make it clear that voluntary manslaughter is nevertheless a permissible verdict. See *Commonwealth v. Gaddy*, 468 Pa. 303, 317–320, 362 A.2d 217, 224–225, and cases there cited.* As we there stated,

"While informing the jury that in his opinion no facts existed to support a verdict of voluntary manslaugh-

entirety, removed nothing from the province of the jury nor did not contain any judicial expression of guilt."
Id. Thus, the comments in *Yount*, unlike the comments here, did not amount to an opinion that voluntary manslaughter was not an appropriate verdict which effectively removed that permissible verdict from the jury's deliberations.

In *Commonwealth v. Gaddy*, 468 Pa. 303, 320, 362 A.2d 217, 225 (1976), the plurality opinion found that the charge was undistinguishable from *Yount*:
"While informing the jury that in his opinion no facts existed to support a verdict of voluntary manslaughter, the trial court fully informed the jury on its ability to return such a verdict; specifically told them that only their recollection of the facts controlled; and stated that they were the sole finders of facts."

10. In *Commonwealth v. Archambault*, 448 Pa. 90, 92, 290 A.2d 72, 73 (1972), we held that the trial court's comment that "it would be a miscarriage of justice to find [the] defendant not guilty" was improper even though it might arguably aid the jury in its deliberations. However helpful the judge's comments may be, he or she may not express his or her opinion concerning the guilt or degree of guilt of the defendant, decisions which must be left to the jury.

* Mr. Justice ROBERTS filed a dissenting opinion on another ground, in which he was joined by Justices NIX and MANDERINO. Mr. Justice (now Chief Justice) EAGEN concurred in the result.

ter, the trial court fully informed the jury of its ability to return such a verdict; specifically told them that only their recollection of the facts controlled; and stated that they were the sole finders of facts. Such a circumscribed statement cannot be said to have impermissibly infringed upon the jury's function. See American Bar Association Standards Relating to Trial by Jury, § 4.7 (Approved Draft, 1968)."

As the opinion of the Court states, the trial judge in the case at bar nowhere told the jury that a voluntary manslaughter verdict was within its power to return. Indeed, he implied the contrary. This was error which requires that this appellant be granted a new trial.

NIX, J., joins in this concurring opinion.