378 A.2d 841

**COMMONWEALTH of Pennsylvania**

v.

**Kenneth COVIL, Appellant.**

Supreme Court of Pennsylvania.

Submitted April 19, 1977.

Decided Oct. 7, 1977.

376

Louis M. Natali, Jr., Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Maxine J. Stotland, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and PACKEL, JJ.

378

OPINION OF THE COURT

ROBERTS, Judge.

 Appellant was indicted on charges of murder and conspiracy arising out of the August 17, 1973 stabbing death of Samuel Molten. On May 13, 1974, after a jury trial, appellant was found guilty of murder of the first degree and conspiracy. After post-verdict motions were denied appellant was sentenced to consecutive sentences of life imprisonment on the murder conviction and ten years probation on the conspiracy conviction. In this appeal [1] appellant contends that the trial court erred in refusing his request for a jury instruction on voluntary manslaughter. We agree, reverse judgment of sentence and grant appellant a new trial on the murder conviction.[2] Finding no error which affects the conviction for conspiracy, we affirm judgment of sentence on the conspiracy charge.

I

 Appellant's trial began after this Court's decision in *Commonwealth v. Jones*, 457 Pa. 563, 319 A.2d 142, cert. denied, 419 U.S. 1000, 95 S.Ct. 316, 42 L.Ed.2d 274 (1974). In *Jones*, we decided that for all trials after that opinion was filed a defendant charged with murder is entitled, upon request, to a jury instruction on voluntary manslaughter.[3]

1. This Court has jurisdiction over the appeal from the murder conviction pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(1), 17 P.S. § 211.202(1) (Supp. 1977). The conspiracy conviction was appealed to the Superior Court which certified the appeal to this Court.

2. Appellant does not contend that the evidence is insufficient to support the verdict of murder of the first degree. However, this Court has an independent obligation to determine if the evidence is sufficient to support a verdict of murder of the first degree. Act of February 15, 1870, P.L. 15, § 2, 19 P.S. § 1187 (1964). A review of the record reveals that the evidence is sufficient to support the verdict.

3. In *Jones*, all six Justices who participated agreed that after the date *Jones* was filed a trial court must give a requested charge on voluntary manslaughter, even when there is no evidence that would reduce the crime from murder to voluntary manslaughter. Two

Thus, appellant was entitled to an instruction on voluntary manslaughter.

The trial court concluded that the rule adopted in *Jones* does not apply to prosecutions brought pursuant to the new Crimes Code.[4] However, *Jones* was decided nearly a year after the Crimes Code became effective, and announced a rule applicable to trials which commenced after the date of that decision.[5] Clearly, this Court contemplated that the rule would be applied to prosecutions brought pursuant to the Crimes Code. There is nothing in the Crimes Code which convinces us that our decision was incorrect.[6]

■ The Commonwealth also contends that failure to instruct the jury on voluntary manslaughter was harmless error because the jury returned a verdict of guilty of murder of the first degree. We cannot conclude, however, that simply because the jury found appellant guilty of murder of the first degree instead of murder of the second degree, a jury instruction on voluntary manslaughter could not have

opinions were filed. The opinion in support of affirmance reasoned that this Court, pursuant to its supervisory power, should adopt a rule that "henceforth a defendant under indictment of murder will be entitled, *upon request*, to have the jury advised of its power to return a verdict of voluntary manslaughter." 457 Pa. at 573–74, 319 A.2d at 148 (emphasis in original). The opinion in support of reversal asserted that, in view of the jury's unquestioned power in all murder prosecutions to return a voluntary manslaughter verdict, failure to give a requested charge on voluntary manslaughter constituted a deprivation of due process and equal protection. 457 Pa. at 577, 319 A.2d at 150.

4. 18 Pa.C.S.A. §§ 101 et seq. (1973).

5. See note 2, supra.

6. The Crimes Code supports the rule announced in *Jones*. Under the Crimes Code, murder and voluntary manslaughter are both classifications of the crime of criminal homicide. 18 Pa.C.S.A. § 2501 (1973). This section supports the conclusion that voluntary manslaughter is a permissible verdict when murder is charged, and the jury should be informed of its power to enter such a verdict.

In *Commonwealth v. Jones (a/k/a Dupree)*, 473 Pa. 211, 373 A.2d 1338 (1977), this Court applied the rule which entitles the defendant to a requested instruction on voluntary manslaughter to a case brought pursuant to the Crimes Code.

affected the verdict. In *United States ex rel. Matthews v. Johnson*, 503 F.2d 339 (3d Cir. 1974) (en banc), cert. denied, 420 U.S. 952, 95 S.Ct. 1336, 43 L.Ed.2d 430 (1975), a case which, like this case, involved a failure to grant a Pennsylvania defendant's requested instruction on voluntary manslaughter, the Third Circuit reasoned:

> "This contention [that the error was harmless because the jury returned a verdict of murder of the first degree] overlooks the possibility that if a jury had three options instead of two, the jury could have compromised on the middle ground of second degree. Although of course no one can say with precision that given three alternatives, the jury has a greater probability of compromise, we do recognize that with three alternatives, at least 'there is a reasonable possibility' of compromise. *Schneble v. Florida*, 405 U.S. 427, 432, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972). Therefore, we cannot say that failure to give the charge 'was harmless beyond a reasonable doubt.' *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967)."

503 F.2d at 346 (footnote omitted). We find the harmless error analysis in *Matthews* to be persuasive, and adopt it as a matter of state law.[7]

■ The Commonwealth relies on the opinion in support of affirmance in *Commonwealth v. Jones*, 457 Pa. 563, 319 A.2d 142, cert. denied, 419 U.S. 1000, 95 S.Ct. 316, 42 L.Ed.2d 274 (1974). While the rule adopted in *Jones* that a defendant is entitled to a requested instruction on voluntary manslaughter received the support of all six participating Justices, the harmless error analysis in the opinion in support of affirmance was adopted by only three of the six Justices.[8] Thus, the opinion in support of affirmance has no preceden-

---

7. Because we adopt the harmless error standard set forth in *Matthews* as a matter of state law, we need not decide if the federal constitution compels us to apply that standard. See generally *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 703 (1967).

8. The other three Justices concluded the error in refusing the requested instruction on voluntary manslaughter was not harmless. 457 Pa. at 577, 319 A.2d at 150 (opinion in support of reversal).

tial value on the harmless error issue; we consider it only for its persuasive value. See *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Commonwealth v. Rightnour,* 469 Pa. 107, 364 A.2d 927 (1976) (plurality opinion). See generally *Commonwealth v. Davenport,* 462 Pa. 543, 559 n.3, 342 A.2d 67, 75 n.3 (1975).

The opinion in support of affirmance in *Jones* concluded that because the jury did not return a verdict of guilty of murder of the second degree, there is no reason to conclude the jury would have returned a voluntary manslaughter verdict if an appropriate instruction had been given. As is made clear by the Third Circuit's later decision in *Matthews,* this analysis overlooks the possibility that granting an instruction on voluntary manslaughter would make the jury more likely to return a compromise verdict of murder of the second degree. We therefore conclude that denial of a voluntary manslaughter instruction is not harmless error simply because the jury returned a verdict of murder of the first degree. Thus, this Court held in *Commonwealth v. Jones (a/k/a Dupree),* 473 Pa. 211, 373 A.2d 1338 (1977), that denial of the defendant's right to a jury instruction on voluntary manslaughter was reversible error even though the jury returned a verdict of murder of the first degree.

Therefore, appellant's conviction of murder of the first degree must be reversed, and a new trial granted.

## II

■■ The trial court's failure to instruct the jury on voluntary manslaughter, in a case in which there is no evidence of provocation or self-defense, does not affect the validity of a conviction for conspiracy. *Commonwealth v. Whitfield,* 474 Pa. 27, 376 A.2d 617 (J. 18, 1974, filed August 8, 1977). The reason the court must grant a requested instruction on voluntary manslaughter is not that the facts would support a conclusion by the jury that the killing was committed in the heat of passion or under conditions of imperfect self-defense. Rather, the instruction is given because the jury may, out of sympathy or an awareness of

extenuating circumstances, find the defendant guilty of a lesser degree of criminal homicide than the evidence could support. It is because of this mercy dispensing power that the defendant is entitled to have the jury informed of all permissible verdicts. With respect to the conspiracy charge, however, the jury was informed of all permissible verdicts. While an instruction on voluntary manslaughter might have affected the degree of murder for which the jury decided to convict appellant, it could not have led the jury to acquit appellant of conspiracy.

Therefore, we must address appellant's additional claims that the trial court erred: 1) in admitting into evidence a conversation between the victim and one of the co-conspirators; and 2) in failing to give a requested limiting instruction when this evidence was introduced.

The challenged testimony concerned an argument between Edward Ryder, one of four prisoners accused of the murder, and Samuel Molten. On August 15, 1973, two days before the killing, Molten and Ryder argued loudly while they were on a catwalk twenty to twenty-five feet above the ground floor of the prison. Molten said, "the Muslims are nothing." Ryder responded that "if [Molten] said anything disrespectful towards the Messenger [Black Muslim leader Elijah Muhammad] again, then [Ryder] should throw [Molten] off the balcony."

Appellant objected to this evidence as hearsay. However, these statements were not admitted for the truth of the matters asserted. See generally J. McCormick, Evidence §§ 246, 249 (2d ed. 1972). Molten's statement was not admitted to prove anything about Muslims, but to show a motive for the killing. Similarly, Ryder's statement was not admitted to prove Molten should have been thrown off the balcony, but to prove Ryder's reaction to Molten's statement —Ryder's state of mind—which in turn helped prove the motive for the killing. The Commonwealth introduced other evidence that the four co-conspirators, Ryder, appellant, and two other Muslim prisoners, plotted to kill Molten because he made disparaging remarks about their religion. Thus,

testimony concerning the argument was admissible, not for the truth of the matters asserted, but as proof of the motive for killing. See generally *Commonwealth v. Wright*, 455 Pa. 480, 317 A.2d 271 (1974).

 When evidence is admissible for a limited purpose, a defendant is entitled to a limiting instruction. See McCormick, supra, § 59; 1 J. Weinstein, Evidence ¶¶ 105[01], 105[05] (1976). We are not here concerned, however, with the right to a limiting instruction, but with the timing of the instruction. When the evidence was admitted the court concluded that it could not clearly perceive the ultimate meaning of the evidence, and that to try to explain the exact purpose for which the evidence was admitted before the rest of the evidence was presented might be unfair to the Commonwealth or the defendant. The court said it would analyze thoroughly in its general charge the purpose for which the evidence was admitted.[9] Appellant objected to this procedure. Therefore we must decide if it was error to postpone the limiting instruction until the end of the case.

 A limiting instruction may be given either as the evidence is admitted or as part of the general charge. 1 Weinstein, supra, ¶ 105[05]. *Troutman v. United States*, 100 F.2d 628 (10th Cir. 1938); see *United States v. Allen*, 468 F.2d 612 (5th Cir. 1972), cert. denied, 410 U.S. 935, 93 S.Ct. 1389, 35 L.Ed.2d 599 (1973) (no error in postponing instruction until general charge); *United States v. Annoreno*, 460 F.2d 1303 (7th Cir.), cert. denied, 409 U.S. 852, 93 S.Ct. 64, 34 L.Ed.2d 95 (1972) (same). We emphasize, however, that it is

---

**9.** In fact, the court did not give the promised instruction. However, appellant failed to object to the omission. Appellant therefore has waived this issue. Pa.R.Crim.P. 1119(b); *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974). If a timely objection had been made, the omission could have been corrected at trial. Indeed, it appears that the omission was merely an oversight; in its summary of the evidence the court made no mention of the argument, and thus may have forgotten its promise to give the limiting instruction. Having failed to make a timely objection, appellant cannot be heard to complain that the limiting instruction was not given in the court's general charge. Accordingly, we only consider if the court erred in not giving the instruction at the time the evidence was admitted.

better to give the limiting instruction at the time the evidence is admitted:

"There are sound reasons for encouraging the practice of giving limiting instructions as the evidence is · received. The impact of the evidence in a case tends to be cumulative, each segment building on the evidence that preceded it. The jury will probably get a clearer picture of the interrelation between the evidence and the factual issues to which they are relevant if the limitations of the evidence are spelled out as it is presented. It is unrealistic to expect jurors to selectively suppress their impression of the facts until the end of the trial, after all the evidence has been received."

1 Weinstein, supra, ¶ 105[05] at 105–34—105–35.

 In this case, the court was concerned that the meaning of the argument between Ryder and Molten might vary, depending on what other evidence the Commonwealth presented, and was concerned that its instructions might be misleading. At the time the evidence was admitted, other evidence indicated that a conspiracy had been entered into by the evening of August 16, 1973, but did not indicate whether a conspiracy had been entered into when the argument took place on August 15. Further evidence as to when the conspiracy was formed, and when appellant joined the conspiracy, might have affected the meaning of the evidence of the argument between Ryder and Molten. We are also convinced that the danger that the jury would misuse the evidence of the argument was relatively minor,[10] thus reducing the necessity that a limiting instruction be given immediately. In these circumstances, we do not believe the trial court abused its discretion in postponing the limiting instruction until its general charge.

Therefore, we affirm the conspiracy conviction.

**10.** Appellant's objection to the evidence was that it was hearsay. We conclude that there was little danger that the jury would rely on either the statement made by Molten or the statement made by Ryder for the truth of the matters asserted.

Judgment of sentence in No. 140 reversed and a new trial granted.

Judgment of sentence in No. 146 affirmed.

MANDERINO, J., joins in Part I of this opinion.

EAGEN, C. J., and POMEROY, J., concur in the result.

NIX, J., filed a concurring and dissenting opinion.

MANDERINO, J., filed a concurring and dissenting opinion.

NIX, Judge, concurring and dissenting.

Although the trial in this case occurred after *Commonwealth v. Jones*, 457 Pa. 563, 319 A.2d 142, *cert. denied*, 419 U.S. 1000, 95 S.Ct. 316, 42 L.Ed.2d 274 (1974), it also occurred after the enactment of the 1972 Crimes Code. Although we recognized the "mercy dispensing" power of the jury under the 1939 Crimes Code, in my judgment this power does not exist under the 1972 Crimes Code. Therefore, I would affirm both judgments. *See* my dissent in *Commonwealth v. Garcia*, 474 Pa. 449, 378 A.2d 1199 (1977).

MANDERINO, Justice, concurring and dissenting.

While I join in that part of the court's opinion reversing appellant's conviction for murder in the first degree, I dissent from that part of the majority opinion which would require a party to object *twice* in order to avoid *Clair's* waiver rule.

When the trial court admitted into evidence a conversation between the victim and one of the co-conspirators, appellant objected to the evidence as hearsay. Assuming the evidence was admitted not for the truth of the matter asserted but to show motive, the defendant was entitled, as the majority concedes, to a limiting instruction.

The trial court concluded, over objection, that it would be more prudent to wait and give the limiting instruction after all the evidence had been presented, and informed the defendant that it would "analyze thoroughly in its general

386

charge" the purpose for which the evidence was admitted. Through what the majority terms "oversight," no limiting instruction was even given. Despite the fact the defendant timely objected to the admission of this evidence, and objected to the trial court's procedure of giving the instruction at a later time, the majority holds that appellant waived the issue under *Clair* for not *again* objecting at the close of the court's general charge. In my view, appellant preserved this issue for review when he objected to the admission of the evidence at the time it was admitted; I would not extend *Clair* to require an objection at the time the evidence is admitted *and* at the close of the court's charge to the jury. Today's decision is especially harsh when, as here, the trial judge disposed of an objection by promising to give an instruction at a later time and then does not do so. The purpose of *Clair* is to *alert* the trial court to possible errors to enable the court to correct those errors. *Clair* should not be invoked when a party failed to *remind* the trial court that the trial court has already been once alerted to a possible error.