COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Elder and Annunziata
Argued at Salem, Virginia


EDWIN CECIL TURNER, JR.
                                          OPINION BY
v.   Record No. 0986-94-3        JUDGE ROSEMARIE ANNUNZIATA
                                          OCTOBER 1, 1996
COMMONWEALTH OF VIRGINIA


         FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
                 Clifford R. Weckstein, Judge

         Jonathan M. Apgar (Damico & Apgar, on
         briefs), for appellant.

         Eugene Murphy, Assistant Attorney General
         (James S. Gilmore, III, Attorney General, on
         brief), for appellee.


     Following a jury trial in the Circuit Court of the City of

Roanoke, appellant, Edwin Cecil Turner, Jr., was convicted of

first degree murder and the use of a firearm in the commission of

murder.  Pursuant to the jury's recommendation, appellant was

sentenced to life imprisonment plus two years.  On appeal,

appellant contends the trial court erred in refusing to instruct

the jury on voluntary manslaughter.  We agree, but find the error

to be harmless; accordingly, we affirm.

                              I.

     On April 3, 1992, appellant shot and killed William Dale

Hartman.  For at least four days preceding the shooting,

appellant and Hartman were engaged in an on-going conflict.

Appellant believed Hartman had stolen some of his property.  When

appellant confronted Hartman, the two fought.  Appellant

eventually restrained Hartman, and Hartman admitted having the property. Hartman escaped and, thereafter, threatened to kill appellant. The evidence is in dispute as to whether Hartman brandished a firearm at that time.

The two men then swore out arrest warrants for each other. Appellant accused Hartman of burglary; Hartman accused appellant of assault and battery. After learning of Hartman's assault on a retarded girl and of the warrant Hartman had sworn out against him, appellant stated to the police that "he would kill the bastard [Hartman] and save everybody a lot of time and trouble" and that "anyone that would take advantage of a retarded girl was a low son-of-a-bitch that ought to die." According to appellant, Hartman vowed to kill him if he did not drop the charges. Appellant then swore out a warrant against Hartman for intimidating a witness.

During the course of these events, appellant's mental state deteriorated. Appellant claimed he could "smell" Hartman in his home; he took measures to barricade his windows and front door, and searched for Hartman in his home. Appellant and his girlfriend, Regina Ferris, purchased a handgun, which they placed in Ferris' vehicle. Appellant grew increasingly upset when he learned that Hartman had been released on bond with respect to the warrants appellant had sworn out.

On the evening of April 3, appellant left his mother's house in Ferris' vehicle to pick up a pizza. On his way, appellant

drove past his apartment to see if Hartman was around. Appellant saw Hartman sitting in his car and pulled alongside him. According to appellant, Hartman raised his hand, and appellant believed he held a gun. Appellant stated that he sped away with Hartman in pursuit.

Eventually, the two stopped at an intersection. Forensic evidence revealed that appellant shot at Hartman's vehicle in the intersection. The two then proceeded into an adjacent parking lot. According to appellant, Hartman followed him into the parking lot and pulled alongside appellant's vehicle. An eyewitness testified that appellant pursued Hartman. Appellant stated that Hartman kept raising his hand toward him but that he was not sure he ever saw Hartman fire a weapon. As they proceeded, appellant continued to shoot at Hartman. Hartman's vehicle eventually collided with a parked van, and appellant drove away. Hartman received five gunshot wounds, two of which were lethal. No weapons or shell casings were found in Hartman's vehicle.

The court instructed the jury that they could find appellant (1) guilty of first degree murder; or (2) guilty of second degree murder; or (3) not guilty.[1] The court refused appellant's proffered instruction on voluntary manslaughter. The jury found appellant guilty of first degree murder. On appeal, appellant

_____

[1]The court also instructed the jury on self-defense and irresistible impulse, which would have resulted in a not guilty verdict if the jury had found accordingly.

- 3 -

contends that the evidence supported a voluntary manslaughter conviction and that the court erred in refusing the proffered instruction. We affirm the convictions for the reasons that follow.

## II.

First degree murder is defined as a malicious killing accomplished by a willful, deliberate, and premeditated act. 2 Virginia Model Jury Instructions--Criminal 34.200 (1993 repl. ed. with 1995 Supp.). Second degree murder does not require a willful, deliberate, and premeditated act; it is defined simply as a malicious killing. Id. at 34.320. Voluntary manslaughter is defined as an intentional killing committed while in the sudden heat of passion upon reasonable provocation. Id. at 34.500; Read v. Commonwealth, 63 Va. (22 Gratt.) 924, 937-38 (1872).

"To speak of a homicide as having been committed with malice aforethought and in sudden passion, upon reasonable provocation is a legal solecism." Belton v. Commonwealth, 200 Va. 5, 9, 104 S.E.2d 1, 4 (1958). Malice and passion cannot co-exist. E.g., id. at 10, 104 S.E.2d at 5. Likewise,

> if an unlawful homicide be committed in pursuance of a preconceived purpose, the offence will be murder, no matter how great sudden provocation may have immediately preceded the act. The provocation may have been brought about or sought by the perpetrator; or he may have availed himself of it to give color of justification or excuse to his act, done in execution of his deliberate purpose.

- 4 -

Read, 63 Va. (22 Gratt.) at 938.

The determination of whether a killing is committed in pursuit of a continuing animus or upon reasonable provocation or whether it was accomplished maliciously or in the heat of passion is a jury question. See id. at 939; Moxley v. Commonwealth, 195 Va. 151, 160, 77 S.E.2d 389, 394 (1953). Accordingly, a trial court must instruct the jury on the lesser-included offense of voluntary manslaughter if the evidence of heat of passion and reasonable provocation amounts to "more than a scintilla." See, e.g., Buchanan v. Commonwealth, 238 Va. 389, 409, 384 S.E.2d 757, 769 (1989), cert. denied, 493 U.S. 1063 (1990).

Although the Commonwealth prevailed at trial, we must view the evidence with respect to the refused instruction in the light most favorable to the defendant. E.g., Boone v. Commonwealth, 14 Va. App. 130, 131, 415 S.E.2d 250, 251 (1992). Doing so, we find that the evidence in this case supported a voluntary manslaughter instruction and that the trial court's failure to instruct the jury on that offense was error.

It remains only to determine whether that error was harmless. An error is harmless "`if a reviewing court can conclude, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same.'" Davies v. Commonwealth, 15 Va. App. 350, 353, 423 S.E.2d 839, 840 (1992) (quoting Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc)).

Thus, where the reviewing court is able to determine that the trial court's error in failing to instruct the jury could not have affected the verdict, that error is harmless. Morse v. Commonwealth, 17 Va. App. 627, 638, 440 S.E.2d 145, 152 (1994). Such a determination can be made where it is evident from the verdict that the jury would have necessarily rejected the lesser-included offense on which it was not instructed. See LeVasseur v. Commonwealth, 225 Va. 564, 592 n.3, 304 S.E.2d 644, 659 n.3 (1983), cert. denied, 464 U.S. 1063 (1984) (jury's conviction of capital murder to the exclusion of first degree murder was necessarily a rejection of second degree murder); State v. Bunnell, 455 S.E.2d 426, 430 (N.C. 1995) (jury's conviction of first degree murder to the exclusion of second degree murder was necessarily a rejection of voluntary manslaughter); State v. Mendez, 599 A.2d 565, 570-72 (N.J. Super. Ct. App. Div. 1991) (jury's conviction of purposeful or knowing murder to the exclusion of aggravated manslaughter was necessarily a rejection of reckless manslaughter); cf. Schad v. Arizona, 501 U.S. 624, 645-48 (1991) (defendant not entitled to new trial where trial court failed to instruct jury on lesser-included offense if jury not compelled to choose between offense of conviction and acquittal).

By contrast, where it is impossible to determine from the verdict whether the jury would have necessarily rejected a lesser-included offense on which it was not instructed, error in

refusing to instruct on that offense is not harmless.  See Boone 14 Va. App. at 132-33, 415 S.E.2d at 251-52 (conviction of malicious wounding reversed where assault and battery instruction, supported by evidence, refused; jury's rejection of lesser-included offense of unlawful wounding not necessarily a rejection of assault and battery); Barrett v. Commonwealth, 231 Va. 102, 106-07, 341 S.E.2d 190, 192-93 (1986) (conviction on malicious wounding reversed where unlawful wounding instruction, supported by evidence, refused); McClung v. Commonwealth, 215 Va. 654, 657, 212 S.E.2d 290, 292-93 (1975) (conviction on second degree murder reversed where voluntary manslaughter instruction, supported by evidence, refused).

As appellant and the dissent note, "[i]t is immaterial that the jury might have rejected the lesser-included offense" where a lesser-included offense instruction supported by the evidence is refused.  Barrett, 231 Va. at 107, 341 S.E.2d at 193 (emphasis added); McClung, 215 Va. at 657, 212 S.E.2d at 292-93; Boone, 14 Va. App. at 132-33, 415 S.E.2d at 251-52.  Rather, such error is harmless only where the jury's resolution of disputed facts compels the conclusion that it necessarily excluded an alternative resolution of fact that would have supported the lesser-included offense on which it was not instructed.  Such is the case here.

In convicting appellant of first degree murder, the jury rejected the lesser-included offense of second degree murder.  In

- 7 -

so doing, the jury found beyond a reasonable doubt that appellant acted not only maliciously, but also willfully, deliberately, and premeditatedly. Homicide committed pursuant to a preconceived plan is not voluntary manslaughter; premeditation and reasonable provocation cannot co-exist. Read, 63 Va. (22 Gratt.) at 938; see also Jenkins v. Commonwealth, 244 Va. 445, 457-58, 423 S.E.2d 360, 368 (1992), cert. denied, 507 U.S. 1036 (1993) (voluntary manslaughter instruction properly refused where evidence clearly showed killing premeditated). The verdict reached by the jury here compels the conclusion that it would never have reached a voluntary manslaughter verdict. Bunnell, 455 S.E.2d at 426; State v. Shoemaker, 432 S.E.2d 314 (N.C. 1993); State v. Freeman, 170 S.E.2d 461, 465 (N.C. 1969).[2] Therefore, we conclude that

_____

[2]The dissent cites the following four cases in support of its conclusion that the error in refusing the instruction was not harmless: (1) United States ex rel Matthews v. Johnson, 503 F.2d 339, 346 (3d Cir. 1974) (en banc), cert. denied, 420 U.S. 952 (1975); (2) Commonwealth v. Covil, 378 A.2d 841 (Pa. 1977); (3) State v. Benavidez, 616 P.2d 419 (N.M. 1980); and (4) People v. Hansma, 269 N.W.2d 504 (Mich. Ct. App. 1978).

The decision in Matthews is no longer the law in the Third Circuit. See Geschwendt v. Ryan, 967 F.2d 877, 885 n.13 (3rd Cir.), cert. denied, 506 U.S. 977 (1992) (declining to apply Matthews, recognizing that Schad v. Arizona, 501 U.S. 624 (1991), had overruled it).

The Covil court adopted the Matthews reasoning in reaching its decision. Since Matthews has been overruled, the import of Covil is problematic.

The decision in State v. Benavidez, 616 P.2d 419 (N.M. 1980), is based on Keeble v. United States, 412 U.S. 205 (1973), which addressed a different issue than the one presented here. In Keeble, the only choices afforded the jury were conviction of the greater offense and acquittal; the trial court refused to instruct the jury on a lesser-included offense. Accordingly, the

the jury in this case, by rejecting the lesser-included offense of second degree murder, necessarily rejected the factual basis upon which it might have rendered a verdict on the lesser-included offense of voluntary manslaughter.[3]

Accordingly, the court's error was harmless, and appellant's convictions are affirmed.

                                                    Affirmed.

(..continued)
Supreme Court could not say "that the availability of a third option--convicting the defendant of [the lesser-included offense on which it was not instructed]--could not have resulted in a different verdict."  Keeble, 412 U.S. at 213.  The jury in this case, however, was afforded a third option--to convict on second degree murder.  Cf. Schad, 501 U.S. at 645-48 (defendant not entitled to new trial where lesser-included offense instruction is refused if jury is given three options--conviction of a greater offense, conviction of a lesser offense, and acquittal-- and chooses to convict on greater offense; jury not faced with the "all-or-nothing" choice between conviction and acquittal).

     Finally, the court in People v. Hansma, 269 N.W.2d 504 (Mich. App. 1978), did not adopt a harmless error analysis which is well-established as the standard of review in such cases under Virginia law.  See, e.g., Davies, 15 Va. App. at 353, 423 S.E.2d at 840.

     [3]This finding is further supported by the fact that the jury was instructed that "[e]xpress malice exists when a person acts with a deliberate mind and formed design."  When the jury found that appellant acted premeditatedly, it was compelled to find malice.  Again, since malice and passion cannot co-exist, see Belton, 200 Va. at 10, 104 S.E.2d at 5, it is clear the jury would never have reached a voluntary manslaughter verdict.  To suggest the converse is a legal non sequitur.

- 9 -

Benton, J., dissenting.

When reviewing whether the trial judge properly refused an instruction proffered by the accused, we must view the evidence in the light most favorable to the accused. Martin v. Commonwealth, 13 Va. App. 524, 526, 414 S.E.2d 401, 401 (1992). If the record contains more than a scintilla of evidence to support a proffered instruction on a lesser included offense, the trial judge's "failure to give the instruction is reversible error." Boone v. Commonwealth, 14 Va. App. 130, 132, 415 S.E.2d 250, 251 (1992). I agree with the majority that the trial judge erred in refusing the voluntary manslaughter instruction. I disagree with the majority's finding that the error was harmless.

In my opinion, this Court cannot reasonably conclude upon this record that the error did not affect the jury's verdict. See Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991)(en banc). "As a general rule, whether provocation, shown by credible evidence, is sufficient to engender the furor brevis necessary to rebut the presumption of malice arising from a homicide is a question of fact." McClung v. Commonwealth, 215 Va. 654, 656, 212 S.E.2d 290, 292 (1975). Viewed in the light most favorable to Turner, the evidence provided a sufficient basis to support giving the instruction and, thus, a finding by the jury, so instructed, that he was guilty of voluntary manslaughter.

The issue whether Turner acted maliciously was disputed.

Turner's statement to the police provided evidence that supported the hypothesis that Turner acted out of passion and not with malicious intent. The evidence proved that Turner thought the victim was "pointing a firearm at [him]." Thus, the jury had more than sufficient evidence from which it could have found, if properly instructed, a non-malicious killing.

Because the error in refusing the instruction deprived the jury of the opportunity to find facts and apply those facts to the law, this case is not one in which "the other evidence of guilt was so overwhelming and the error so insignificant by comparison that the error could not have affected the verdict." Hooker v. Commonwealth, 14 Va. App. 454, 457 n.2, 418 S.E.2d 343, 345 n.2 (1992). We do not find the facts, the jury does. The trial judge's error in failing to give the instruction is not rendered harmless merely because we believe that the jury had before it sufficient evidence to support its verdict.

> Other evidence of a disputed fact, standing alone, does not establish that an error is harmless . . . . [A] harmless error analysis . . . [is not] simply a sufficiency of the evidence analysis.

Id. at 458, 418 S.E.2d at 345.

Moreover, because the harmless error analysis is not a sufficiency of the evidence analysis, "[i]t is immaterial that the jury could have reached [the] contrary conclusions [that it reached]." McClung v. Commonwealth, 215 Va. 654, 657, 212 S.E.2d 290, 293 (1975). Based on the evidence at trial, the jury could

have found Turner guilty of voluntary manslaughter.

> The jury is not required to accept, _in toto_, either the theory of the Commonwealth or that of an accused. They have the right to reject that part of the evidence believed by them to be untrue and to accept that found by them to be true. In so doing, they have broad discretion in applying the law to the facts and in fixing the degree of guilt, if any, of a person charged with a crime.

Belton v. Commonwealth, 200 Va. 5, 9, 104 S.E.2d 1, 4 (1958).

The decision in LeVasseur v. Commonwealth, 225 Va. 564, 304 S.E.2d 644 (1983), cert. denied, 464 U.S. 1063 (1984), is not controlling on the facts of this case. "[I]n the circumstances of [that] case," the Supreme Court found that the refusal of a second degree murder instruction was harmless error. Id. at 592, 304 S.E.2d at 659. There, however, the jury convicted the defendant of capital murder only after rejecting a finding of first degree murder, which it was instructed to render if it believed that the defendant was voluntarily intoxicated. Id. Clearly, under those circumstances, any instruction on second degree murder, which is a malicious killing, as are first degree murder and capital murder, would have necessarily required the jury to find voluntary intoxication, a factual finding the Court concluded the jury had rejected when it did not convict of first degree murder. Those circumstances are not present in this case.

Although the evidence could have supported a finding of non-malicious homicide, the trial judge only instructed the jury on degrees of homicide that involved malice. A jury's decision

to select culpability from one of the malicious homicides on which it was instructed does not manifest beyond a reasonable doubt that the jury would not have found a non-malicious killing if properly instructed. As the LeVasseur Court observed, the jury's rejection of one theory of the case does not necessarily indicate that it would have rejected another theory of the case that was supported by evidence. Id. at 592 n.3, 304 S.E.2d at 659 n.3. See also Potter v. Commonwealth, 222 Va. 606, 611, 283 S.E.2d 448, 451 (1981); McClung, 215 Va. at 657, 212 S.E.2d at 292-93; Martin, 13 Va. App. at 528, 414 S.E.2d at 403-04.

In failing to instruct the jury that it could convict Turner of a homicide of a lesser grade than first or second degree murder, the trial judge misdirected the jury by limiting the jury's options to a finding of a malicious killing or a not guilty verdict. "The central point is that the jury might have decided to convict [Turner] of murder because the State proved that [he] intentionally killed another without a reasonable belief that [he] acted in self defense -- despite clear proof that [Turner] was provoked to murderous passion by the victim." Falconer v. Lane, 905 F.2d 1129, 1136 (8th Cir. 1990).

Cases from North Carolina and New Jersey are no more persuasive regarding the law in Virginia than cases from other jurisdictions holding that the error in refusing a similar instruction was not harmless. See, e.g., United States ex rel Matthews v. Johnson, 503 F.2d 339, 346 (3d Cir. 1974)(en banc),

cert. denied, 420 U.S. 952 (1975); People v. Hansma, 269 N.W.2d 504, 506 (Mich. Ct. App. 1978); State v. Benavidez, 616 P.2d 419, 421 (N.M. 1980); Commonwealth v. Covil, 378 A.2d 841, 843–44 (Pa. 1977).

> It is basic that a defendant is entitled to have his theory of the case submitted to the jury under proper instructions where the evidence supports it. We cannot conclude that it was harmless error not to give an instruction which is supported by evidence. . . . Here, assuming there was evidence of provocation, the jury was not given the choice of finding that the defendant committed voluntary manslaughter. To argue that a finding by the jury that the defendant acted with deliberate intention precludes any possibility that they could have found sufficient provocation begs the question. The jury was simply not given the choice. We do not consider this to be harmless and non-prejudicial where the evidence would support such a choice by the jury.

Benavidez, 616 P.2d at 421 (citations omitted).

In footnote two, the majority explains why it considers unpersuasive the decisions from other jurisdictions that are contrary to the majority's holding. I find the majority's discussion equally unpersuasive. The nub of the majority's analysis begins with its misplaced reliance upon the Third Circuit's discussion of Schad v. Arizona, 501 U.S. 624 (1991). The majority fails to note that in Schad, where the defendant was indicted and tried only for first degree capital murder, the Supreme Court rejected the defendant's due process argument and held that the trial judge did not err in failing to instruct the

- 14 -

jury on the offense of robbery. 501 U.S. at 647. Unlike Schad, we all agree that the trial judge did err in Turner's case. The disagreement in Turner's case centers upon whether the error was harmless.

Moreover, nothing in Schad purports to address the requirement to give an instruction on a lesser included homicide offense, when sufficient evidence supports an instruction on the lesser included offense and the only distinction between the homicides involves the jury's resolution of conflicting evidence to determine the mens rea of the defendant. In Schad, the trial judge granted instructions for the offenses of first-degree and second-degree murder and refused instructions only on the separate and distinct offenses of theft and robbery. 501 U.S. at 629. Therefore, Schad involved whether due process required instructing the jury on an entirely different substantive offense, which was not charged in the indictment. Unlike Turner's case, in which the jury was not instructed on different degrees of homicide, in Schad, the jury was instructed on all degrees of homicide proved by the evidence. 501 U.S. at 629. Indeed, the Court in Schad suggests that the issue raised by the defendant was not viable because robbery was not a lesser included offense of the charge of murder. Compare 501 U.S. at 647-48 with 501 U.S. at 661-62 (White, J., dissenting). Thus, the Court rejected the defendant's contention of error in refusing the robbery instruction because it was not a lesser

included offense of the homicide charge.

In <u>Geschwendt v. Ryan</u>, 967 F.2d 877 (3d Cir. 1992), which discussed <u>Schad</u>, the jury found the defendant guilty of first-degree murder.  However, the similarity of <u>Geschwendt</u> to Turner's appeal ends there.  Finding that "when the instructions are viewed as a whole, the trial court did instruct the jury that it could find [the defendant] not guilty by reason of insanity," <u>id.</u> at 883, the Third Circuit found that the trial judge committed no error.  Thus, like <u>Schad</u>, the Third Circuit in <u>Geschwendt</u> was not required to conduct a harmless error analysis.

Although the trial judge in <u>Geschwendt</u> refused to grant the defendant's instruction that he could be found not guilty by reason of insanity, 967 F.2d at 882, the trial judge (1) granted an instruction allowing the jury to convict the defendant of third-degree murder if it found that he suffered from a mental defect rendering him incapable of forming the intent for first-degree murder, (2) granted other "detailed instructions on the insanity defense," and (3) granted an instruction on voluntary manslaughter.  <u>Id.</u> at 880.  Thus, in <u>Geschwendt</u>, where the indictment charged a homicide, the trial judge instructed the jury on all the degrees of homicide.

In an alternative holding, the Third Circuit reasoned that if the jury believed the defendant was insane, it would have convicted him of third-degree murder instead of first-degree murder.  <u>Id.</u> at 885-86.  The court ruled that it could affirm the

conviction on this alternative ground. In analyzing this alternative, the court discussed <u>Schad</u> because the defendant had raised a constitutional issue similar to the issue raised in <u>Schad</u>, <u>i.e.</u>, whether the failure to give the instruction violated due process. <u>Id.</u> However, the issue the defendant raised in <u>Geschwendt</u>, like <u>Schad</u>, did not involve a failure to give an instruction on a lesser included offense. <u>Id.</u> at 885. Even though the instruction the trial judge gave explaining third-degree murder and the instruction he denied regarding the defense of insanity alternatively defined the defendant's possible mental state, obviously neither instruction was a lesser included offense of murder. Consequently, the alternative holding in <u>Geschwendt</u> involves a different factual scenario than Turner's case.

Most significantly, however, the portions of the <u>Geschwendt</u> decision that discuss <u>Schad</u> and lesser included offense instructions are dicta and are of dubious value because the Third Circuit lacked jurisdiction over the issue posed by the defendant. The Third Circuit dispositively decided that whether the trial judge erred in refusing the instruction was a matter that could not be reached under its habeas corpus jurisdiction "for, if there was an error at all at his trial, it was solely one of state law" that did not implicate either federal or constitutional law. <u>Id.</u> at 890. Simply put, the Third Circuit's discussion of <u>Schad</u> is dicta because it ruled that it had no

- 17 -

jurisdiction to decide the issue.

In rejecting Benavidez, the majority also misreads the import of Keeble v. United States, 412 U.S. 205 (1973), and decides that Keeble "addressed a different issue than the one presented here." The majority recognizes that in Keeble, "the only choices afforded the jury were conviction . . . and acquittal." However, the majority fails to recognize that the jury in Turner's case faced a functionally equivalent dilemma: a finding of malice or acquittal. Although the trial judge did provide a third alternative, second degree murder, the alternative did not remedy the dilemma because the jury was still deprived of an opportunity to convict without finding malice.

> Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction. In the case before us, for example, an intent to commit serious bodily injury is a necessary element of the crime with which petitioner was charged, but not of the crime of simple assault. Since the nature of petitioner's intent was very much in dispute at trial, the jury could rationally have convicted him of simple assault if that option had been presented. But the jury was presented with only two options: convicting the defendant of assault with intent to commit great bodily injury, or acquitting him outright.

Keeble, 412 U.S. at 212–13.

A careful review of the Supreme Court's reasoning reveals that Keeble is, in fact, directly on point because the reversible error in Keeble was exactly the same as the reversible error in

Turner's case: the trial court deprived the jury of a choice between different kinds of mens rea, all of which were supported by the evidence. Specifically, the trial court committed reversible error by limiting the jury's options to finding malice or acquitting the defendant. As the Supreme Court stated in Keeble, "it is now beyond dispute that the defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." 412 U.S. at 208.

Finally, the majority asserts that the court in Hansma did not conduct a harmless error analysis. Although it is true that no harmless error analysis is expressly included in the relevant portion of the opinion, the fact that the court found another error harmless, 269 N.W. 2d at 509, leads to the conclusion that the court found the relevant error prejudicial. That is, the court was familiar with the analysis and if it had found this error to be harmless, it would have said so. Rather, it reversed because it did not find the error to be harmless. Therefore, Hansma does support the assertion that failure to instruct on voluntary manslaughter is reversible error.

For these reasons, I would hold that the error was not harmless, reverse the convictions, and remand for a new trial.